# THE COUNTY OF JACKSON

*v.*

# STEPHEN S. HALL.

1. CHANGE OF VENUE — *in suits where a county is a party.* In a suit where a county is a party, a change of venue may be awarded to another county, as in all civil actions, when application therefor is properly made.

2. RATIFICATION *of contract.* A county court made an order for the erection of a jail, to cost not exceeding $10,000. The county judge and an associate justice of the county made a contract with certain parties, by which the latter were to build a jail at a cost of $25,000. After the building was completed, the county court, acting as such, received it and appropriated it to the use of the county, and acknowledged that the county owed the contractors the balance due upon the contract price. This final action of the county court bound the county according to the terms of the contract, notwithstanding those who made the contract on behalf of the county may have exceeded their authority in respect to the cost of the building, the county court having competent authority in reference to the subject matter of the contract.

3. ASSUMPSIT—*recovery under the common counts.* Where a contract has been performed, and nothing remains to be done but to pay the money, a recovery therefor may be had under the common counts.

4. SAME — *and herein, where the payment was not to be made in money.* Where a party contracted to build a county jail, and to receive in payment therefor the bonds of the county, and, upon completion of the building, did receive the bonds, which were afterwards, however, repudiated by the county authorities as invalid: *Held,* the county having denied the validity of the bonds, the party doing the work could recover the price agreed to be paid therefor, in money, and under the common counts; the county, having repudiated the bonds, would be estopped to assert their validity so as to defeat the action.

5. SAME—*must place the county in statu quo.* But before a recovery could be had in such case, the plaintiff should return the bonds to the county, or at least bring them into court and surrender them to be canceled.

APPEAL from the Circuit Court of Union county; the Hon. MONROE C. CRAWFORD, Judge, presiding.

The opinion states the case.

Mr. THOMAS G. ALLEN and Mr. D. T. LINEGAR, for the appellant.

Messrs. ALLEN & WEBB and Messrs. MULKEY, WALL & WHEELER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was an action of assumpsit, brought by appellee, in the Jackson circuit court, against appellant. The declaration contained the usual counts for work and labor, and materials furnished, and the money counts. The plea of the general issue and two special pleas were filed, but the special pleas were subsequently withdrawn and issue formed on the general issue. A trial was had by the court without the intervention of a jury, by consent of parties.

Before the plea was filed, appellee presented a petition to the judge, in vacation, for a change of venue, and the case was

transferred to Union county. That order is assigned as error, and it is insisted that, as a county was a party, the statute does not authorize a change of venue to be granted. This question was before this court in the case of *McBane et al.* v. *The People ex rel.* 50 Ill. 503, where it was held that a change of venue might, under the statute, be awarded to another county on an application properly made, although a county was a party to the suit. That case is conclusive of this question, and renders its discussion unnecessary.

It is next urged that the contract made by the county with Hall was unauthorized, and the county is, therefore, not liable. It appears from the record that the county court of Jackson county, at the March term, 1864, passed an order declaring that, for the purpose of building a jail, bonds should be issued, under the act of the twentieth day of February, 1863, and John B. Clinton, county judge, was to prepare a plan and specifications, and to make a contract for the erection of a jail, provided it should not cost exceeding $10,000.

The contract was not let. A meeting was held, at which Clinton, Davis, an associate justice, and appellee, were present, at the house of Clinton, when it was agreed that appellee should erect the building with wooden cells, for which he was to be paid the sum of $18,000, of which $15,000 were to be the bonds authorized by the act of the general assembly, and the remainder in county indebtedness. It seems that specifications were written out, but retained by Clinton; but the parties subsequently met, and the contract was changed, and in the latter part of February, 1865, Clinton and Davis, on the part of the county, agreed with appellee that he should erect the jail with iron cells, and with apartments for the jailor, finished and plastered, etc., for $25,000, of which $15,000 were to be paid in county bonds, and the residue in county indebtedness. The $15,000 were then paid to appellee, and the remainder was to be paid when the work was completed.

It also appears that Clinton and Davis pointed out the lot on which the building should be erected. Appellee proceeded

with the house, and completed it, and, on the thirtieth day of November, 1865, the county court, while in session, settled with appellee, received the building and issued to appellee the bonds of the county for $10,500, being the balance on the contract, and $500 for items not embraced in the agreement. The bonds have never been paid, but were repudiated by the county court as void and not binding on the county. This action of the court took place at the March term, 1866. The court below found the issue for appellee, and rendered judgment for $10,200 against the county.

It is urged that there was no order of the county court authorizing Clinton and Davis to contract for the erection of a building to cost $25,000, and that their acts were unauthorized, and the county can not be held liable for their action. This might probably be urged, had not the county court, which is clearly authorized to provide a jail for the use of the county, received and appropriated the jail to the use of the county, and at the same time acknowledged that the county owed appellee $10,500. This was an official act, performed under competent authority, and, so far as this record discloses, in a manner perfectly regular.

The county judge and his associates are empowered by law to provide a sufficient county jail, whenever the means are such as to justify it, and where they had not previously provided such a building. (Gross' Comp. Counties and County Courts, sec. 19.] Under this section they were not limited in the means that might be employed for the purpose.

Having such power, and having received the jail and issued bonds for its payment, the county thereby become liable and can not avoid the action of the court. The county judge and his associates are elected by the people and become their agents for the management of the financial affairs of the county, and when they act within the scope of their authority, however indiscreet the action, it is binding upon the county. Had appellee erected the building without authority, or even without the knowledge of the members of the court and they had

afterwards purchased the building from him, and agreed to pay the sum stipulated in this contract, no one would have questioned the authority or validity of the transaction. If so, no reason is perceived why they might not receive the building, and bind the county for its payment, although the agreement and the mode of contracting were informal.

It is next urged that the action will not lie, because there was a contract to receive county indebtedness, and the action is for money. It is a well established rule of practice, fully and repeatedly recognized by this court, that, where a contract has been performed, and nothing remains to be done but the payment of the money, a suit may be maintained on the common counts. In this case, appellee completed the building to the satisfaction of the county authorities, who accepted it, and have appropriated it to the use of the county, and have refused to pay the bonds given for its payment, and deny their validity. Having repudiated the validity of the bonds, they can not now say that the suit should have been upon them. Having solemnly refused to pay the bonds, and refused to pay the interest, and denied their validity, appellee has the right to treat them as invalid, and to proceed for a recovery of the amount acknowledged to be due when they settled and accepted the jail. If he choose to accede to their declaration that the bonds are void, they are estopped from now insisting that they are valid, and appellee may recover under the common counts. But before he recovers he must surrender the bonds. He can not hold them, and recover his money likewise. He should at least have brought the bonds into court and surrendered them up to be canceled, before he could recover a judgment. For aught that appears, he may have negotiated the bonds to innocent purchasers, or if not, they may be negotiable, and he may still dispose of them, and the county be rendered liable for their payment. Appellee having failed to bring the bonds into court to be canceled, the court below erred in rendering the judgment in appellee's favor, and for that error, the judgment must be reversed and the cause remanded.

*Judgment reversed.*