$\begin{vmatrix} 8 & 287 \\ 209s & 156 \end{vmatrix}$

## MASTON RENDLEMAN
### v.
## THE COUNTY OF JACKSON.

COUNTIES—INTEREST ON ORDERS.—A county board has power to enter into a building agreement for the payment of interest when it is making an executory contract in regard to a subject-matter with reference to which a duty is imposed upon the county authorities.

APPEAL from the Circuit Court of Jackson county; the Hon. O. A. HARKER, Judge, presiding. Opinion filed April 7, 1881.

Mr. ANDREW D. DUFF, for appellant; arguing in favor of interest upon the order, cited Madison County v. Bartlett, 1 Scam. 67; Pike County v. Hosford, 11 Ill. 170; Hall v. Jackson County, 5 Bradwell, 609; Chicago v. The People, 56 Ill. 327.

Mr. WM. A. SCHWARTZ, for appellee; that a county has no power to issue interest bearing orders, cited Whitewell v. Pulaski County, 2 Dillon, 251; Britton v. Police Jury, 15 Wall. 566; Hardin County v. McFarlin, 82 Ill. 138; Hall v. Jackson County, 95 Ill. 352.

A corporation is not estopped to set up the defense of *ultra vires* when sued upon its warrants: 1 Dillon on Munic. Cor. §412; Herman on Estoppel, §224; Taylor v. Wayne Township, 25 Ia. 447; Glidden v. Hopkins, 47 Ill. 525.

BAKER, J. On the 9th day of June, 1877, the Board of County Commissioners of Jackson county ordered, as appears from the record of its proceedings, that sealed proposals be received at the court house in Murphysboro, until 1 o'clock, P. M., of the 22nd day of June, 1877, for the building of two fire-

Rendleman v. Jackson County.

proof vaults, and for repairing the court house, according to the plans and specifications on file in the office of the county clerk; the board reserving the right to reject any and all bids ; the contractor or contractors to give bond and security in double the amount of the contract ; and " said work to be paid for in county orders, bearing interest at the rate of ten per cent. per annum, payable upon the completion and acceptance of said work."

In pursuance of an order of the board made on the same day, notices were published in six designated public newspapers signed by the county clerk, and inviting proposals for said work, in accordance with the terms mentioned; in which notices it was specified " said work to be paid for in county orders, bearing interest at the rate of ten per centum per annum, payable on the completion of said work."

On the 22nd day of June an order of the board was made and entered on record showing, among other things, a number of bids for said work were received and opened, and stating the names of bidders and the amount of their respective bids, and showing one Isaac Rapp was the lowest bidder, he offering to do said work for $10,850 ; and that the contract for doing said work was awarded to him, and that he was required to give within ten days, bond with good and sufficient security in the penal sum of $21,700, to be approved by the board.

It further appears from the record of the proceedings of the board, that on the 2nd day of July, 1877, bond and security was given by said Rapp in said sum of $21,700, for the faithful performance of his contract, and the same duly approved by the board.   Whereupon, it also appears, it was " ordered by the board that Isaac Rapp be and he is here by awarded the contract of building two fire-proof vaults, alter and repairing the court house of this county according to the plans and specifications of J. H. Maurice, on file in the office of the county clerk, and work to be done in good and workmanlike manner, and all old material that is sound and suitable to be used, and said work to be completed on or before the first day of December, A. D. 1877.   The said Isaac Rapp to be allowed the sum of ten thousand eight hundred and fifty dollars in orders,

bearing interest at the rate of ten per cent. per annum for do-ing said work, of which amount he is hereby allowed the sum of three thousand six hundred dollars, and when said building is enclosed he is to be allowed the sum of three thousand six hundred dollars, and when completed he is to be allowed the further sum of three thousand six hundred and fifty dollars, making the full amount of said contract. All of said orders to bear interest at the rate of ten per cent. per annum.

The order sued on in this case was issued to said Rapp under said contract and in part payment for his work, and was duly assigned by him to Maston Rendleman, appellant; and prior to the commencement of suit said order was duly presented for payment, and payment refused.

The face of said order was as follows :

"State of Illinois.

"No. 3691. Jackson County Board of County Commissioners. Murphysboro, Dec. 24. 1877. Treasurer of said county pay Isaac Rapp, or bearer, five hundred dollars, for work done on court house as per contract, out of moneys in the treasury not otherwise appropriated, with interest at ten per cent. per annum, payable annually.

Countersigned :                         "Charles Kirkham,
"Wm. Bradley, Treasurer.                        "County Clerk."
    $500."

Isaac Rapp, the contactor, testified on the trial he was a carpenter and builder, and that " if the county had proposed to pay for the work in common county orders, he would not have undertaken the work at any price, and that no one would have done the work for less than six or seven thousand dollars more than it cost ; that common county orders were then worth about sixty cents to the dollar, while those interest-bearing orders could be handled at ninety cents."

The question of the liability of the county to 'pay interest on this order, is the only question for adjudication in the case.

It was decided in Hardin County v. McFarlan, 82 Ill. 138, that the county had no implied power or lawful authority to issue interest-bearing bonds for the purpose of funding ordina-ry non-interest-bearing, county orders. Under this decision

the county authorities would also be precluded from issuing interest-bearing county orders for the purpose of paying a pre-existing debt or legal liability, or from making any contract to pay interest on such indebtedness. See, also, Whitewell v. Pulaski County, 2 Dillon's Rep. 249, and Police Jury v. Britton, 15 Wall. 566. In Hall v. Jackson County, 95 Ill. 352, it was held it was not competent for the county board to allow, or pay interest on common county orders issued in settlement of indebtedness already incurred for current county expenses. It is clear, then, from these decisions of the Supreme Court, there is no implied power in the county authorities to contract to pay interest either on indebtedness incurred for the ordinary and current expenses of the county, or on any other character of existing indebtedness.

The question whether the county board may make an executory contract whereby it may contract to pay interest, has never, so far as we are advised, been expressly decided in this State.

In the McFarlan case there are expressions used in the opinion of the majority of the court that seem to imply a county board cannot, under any circumstances, legally contract, in the absence of express statutory authority, to pay interest. We think these expressions are to be construed as used only with reference to the case then before the court; and ought not to control in this suit where a very different case from that then at bar is presented for adjudication.

In County of Pike v. Hosford, 11 Ill. 170, there was an executory contract; by it Hosford was to erect a bridge for the county by a stipulated day, and the county was to pay him therefor $779 when the bridge should be finished and accepted. The county failed to pay; Hasford brought suit, and claimed interest on the contract price from the date the debt was due.

The Supreme Court held the county was not bound to pay interest in the absence of an express agreement to pay it; and said: "If they had designed to take his contract out of the operation of the general rule, they would have expressly stipulated for the payment of interest;" and further said, "counties do not pay interest on their contracts, except in pursuance of

Rendleman v. Jackson County.

an express agreement to do so." This seems to be a plain in-
timation by the court there are some circumstances under
which a county may lawfully contract to pay interest, and that
a provision of that kind might properly have been incorpo-
rated in the contract before them. If we may assume there is
a case where the county board, without any express statutory
authority, has power to contract for the payment of interest,
it plainly is not where there is a then existing indebtedness, or
for moneys already due for current county expenses. In our
opinion, the County of Pike v. Hosford is one of a class of cases
in which such contract may legitimately be made, although in
that particular instance this element of an antecedent agree-
ment to pay interest was wanting. We think a county board
has power to enter into a binding agreement for the payment
of interest when it is making an executory contract in regard
to a subject-matter with reference to which a duty is imposed
upon the county authorities. With respect to such matters, it
may sometimes be of vital importance there should be author-
ity to act promptly and without delay, by entering into an
executory contract, and that, too, at a time when the county
treasury is empty, and there is no prospect of its immediate
or early replenishment. In such event a want of power to
agree to pay interest might frequently occasion great public
inconvenience, detriment and loss; and an inherent power to
so contract is necessarily implied. Bridges, repairs on court-
houses or other public buildings, the spread of epidemics, and
many other matters might afford occasions calling for the ex-
ercise of this inherent power to make an executory contract
involving the payment of interest.

This county order or warrant now in question, drawn by one
officer upon another, and payable at no fixed future time, is
not such negotiable security and commercial paper as would
be free from equities in the hands of the holder, and thereby
change and enlarge the liability of the county. 1 Dil. Mun.
Corp. 406. The reasons of public policy that would militate
against holding an implied authority to issue it, were it such
commercial paper, do not prevail, it being the character of pa-
per it is, and subject to all defenses, even in the hands of a

*bona fide* holder for value. It is expressly made the duty of the county board, to keep in repair the court house, and the county is by the statute clothed with power " to make all contracts and do all other acts in relation to the property and concerns of the county necessary to the exercise of its corporate powers." R. S. Ch. 34, § 24 and § 26. We are unable to see when the county board is making a contract for necessary repairs on the court house, it involves the exercise of any other or greater power, to contract to pay interest on the contract price, and thereby get a dollar's worth of work and material for a dollar with interest thereon until paid, than it does to contract to pay the interest by indirection and issue a county order for a dollar, for less than a dollar's value of such labor and material. It appears from the record, ordinary county orders were worth, at the time of the contract, sixty cents on the dollar; and it can hardly be claimed it would have been better to have paid a dollar for sixty cents of value, than to have made the contract that was made, nor is there reason to suppose any one would have done the work required, and taken therefor at par, that which was worth only sixty cents.

We are of the opinion, that in this case at bar of an executory contract for making repairs on the court house, the agreement to pay interest was valid and binding. The circumstances are such as would seem to render it peculiarly equitable and just the county should pay interest, and it would be a hardship and work a palpable injustice if the law of the case were otherwise. We think it was error in the circuit court to refuse to allow appellant interest on the order. The judgment is reversed and the cause remanded to that court, with instructions to enter a judgment in favor of plaintiff and against defendant, for the amount of the county order, with interest from its date until the time of judgment, at the rate of ten per centum per annum.

Reversed and remanded.