## THE COUNTY OF COLES
*v.*
## S. S. GOEHRING.

*Opinion filed April 20, 1904.*

1. CONSTITUTIONAL LAW—*only prohibition against incurring indebtedness is in section 12 of article 9.* The only prohibition in the constitution on the right of a county to incur indebtedness is in section 12 of article 9, which limits such indebtedness to five per cent of the value of taxable property in the county.

2. SAME—*section 8 of article 9 is not a limitation on the right to incur indebtedness.* Section 8 of article 9 of the constitution, prohibiting county authorities from assessing taxes exceeding seventy-five cents on the $100 valuation unless authorized by a vote of the people, does not limit power of county to incur indebtedness.

3. SAME—*the second sentence of section 12 of article 9 refers to fixed indebtedness.* The second sentence of section 12 of article 9 of the constitution, requiring municipal corporations, before incurring indebtedness, to provide for the collection of a direct annual tax, has reference to indebtedness the amount of which has become fixed and payment deferred to a certain time in the future.

4. COUNTIES—*when anticipation warrants issued by a county are invalid.* Anticipation warrants issued by a county under section 2 of the act of 1879, (Laws of 1879, p. 78,) are void if not on their face made payable solely from taxes already levied, when collected, and which are not countersigned as required by the statute.

5. SAME—*when judgment against county should not include interest on warrants.* Judgment against a county for the contract price of a court house should not include interest, where the only provision for interest made in the contract is upon anticipation warrants issued for the work, which are void.

6. SAME—*county under township organization may erect a court house without vote of the people.* A county under township organization has power to erect a court house without submitting the question to a vote of the people.

7. SAME—*duty and power of county board to provide court house.* It is the imperative duty of a county board to provide a court house and other county buildings, and the fact that the county has not the money in the treasury does not preclude the board from contracting for a court house, provided the constitutional limit of indebtedness is not thereby exceeded.

8. SAME—*when county is liable for the contract price of a court house.* A county is liable for the contract price of a court house, under the common counts and a count for account stated, even though the anticipation warrants issued on the work are void, where the

records of the county board show that they had accepted the building and acknowledged the price fixed by the contract to be due.

9. SAME—*effect when mechanics' liens are claimed against warrants.* The fact that mechanics' liens are claimed against the warrants issued by a county for work done on a court house does not defeat the contractor's right to judgment for the contract price where the warrants are void.

WRIT OF ERROR to the Circuit Court of Coles county; the Hon. H. VANSELLAR, Judge, presiding.

This is an action of assumpsit, begun on December 20, 1901, in the circuit court of Coles county by the defendant in error, Goehring, suing for the use of certain banks and other persons, against the plaintiff in error, the county of Coles, on a contract, entered into between the plaintiff in error and the defendant in error on September 20, 1898, for the repair and reconstruction of the court house in said county. The declaration, as originally filed on December 20, 1901, consisted of three counts. The first count was a consolidated common count. This first count was amended on April 7, 1902, and, as amended, not only contained the usual common counts, including a count for money found to be due on an account then and there stated between the parties, but also included a claim for interest. The second and third counts were special counts upon the contract hereinafter mentioned. The special counts allege by apt averments, that the work was done on the contract, and that the court house was accepted by the county. The plaintiff in error demurred to the special counts, and the demurrer was overruled. A plea of general issue was filed to the declaration, with the stipulation that all defenses to the merits that could be made under any plea well pleaded could be made under the plea of the general issue. The case was then tried by the court without a jury.

After hearing the case the court rendered a judgment in favor of the defendant in error and against the plaintiff in error for $95,204.31. Exceptions were taken by

the plaintiff in error to the judgment. An appeal was prayed and allowed, but never perfected; and this writ of error is sued out from this court for the purpose of reversing said judgment.

The contract, made on September 20, 1898, between Samuel S. Goehring as party of the first part, and the county of Coles acting through a building committee, appointed by the board of supervisors of said county, party of the second part, provides as follows:

"The party of the first part agrees with the party of the second part to furnish labor, and material to repair the court house on the public square in the city of Charleston, county of Coles, in conformity with the proposals, plans and specifications prepared by C. W. Rapp, architect, as mentioned in the printed proposals, which plans and specifications and proposals are hereby made a part of this contract, for the sum of $85,727.00, payable as hereinafter mentioned. The stone, used for the facing, to be Coles county buff sandstone, and the stone used for trimmings to be of the first quality of gray sandstone. The said work to be completed within one year from this date, provided that any delay, occasioned by the failure of the party of the second part to deliver possession of the ground and building to be repaired; and the time for completion shall be extended for a period equivalent to the time lost. Said work to be done under the direction of the architect, acting for the parties of the second part; but no change or alteration to be made from the plans and specifications, without the written consent of the parties hereto. Said work to be paid for during the construction to the parties of the first part, monthly on the basis of eighty-five per cent of the value of the labor performed and material in place in the building, as estimated by the architect, in interest-bearing county orders, bearing seven per cent interest per annum from date thereof, and the balance in interest-bearing county orders, bearing seven per cent interest per annum from date thereof, upon the completion and acceptance of the building.

"Said party of the first part hereby agrees to give bond within three days from this date, according to the proposals aforesaid.

"The above and foregoing contract to be binding upon the party of the first part, his heirs, executors, administrators and assigns, and upon the party of the second part. Should the

party of the first part fail or refuse to proceed with the contract for a period of ten days, according to the spirit thereof, the building committee shall have the right to take possession of all material and complete the work at the expense of the party of the second part.

"Witness our hands and seals this September 20, 1898.

SAMUEL S. GOEHRING;     [Seal.]

COUNTY OF COLES,

(By the Building Committee of the County Board,)

J. K. RARDIN, *Chairman*, [Seal.]

IVORY W. MERRITT, *Sec.* [Seal.]"

Seven other members of the board signed under their hands and seals.

On July 11, 1898, at a regular meeting of the board of supervisors of the county, a communication from R. Alexander, the then county treasurer, to the board was read. This communication stated that the office provided for the county treasurer was too small, badly lighted and located between the ladies' water closet and the main water closet; that it had no ventilation; that it was contaminated with the poisonous gases from those closets, and that there were no vaults for the records or papers, and no place for necessary books and files; that it was unhealthy and unsanitary, and not convenient to accommodate the large number of people constantly called to the treasurer's office; that it was necessary to provide another and better office for the county treasurer; that the court house cannot be re-arranged to provide more room for this office, as the other offices are overcrowded; that there were no offices or rooms for the county judge, State's attorney, coroner, county surveyor, and other officials, and no room to make them; that the building had been erected so long that it was doubtful whether it could be added to with the present old walls without endangering the structure; that it was necessary to have vaults and more room for the treasurer, and room for his books and papers; that it has been for years so unhealthy for the incumbent that each treasurer has been constantly alarmed for his health; that some provision should be

209—10

made for a proper office for the county treasurer, so that he can transact his business according to law, and preserve his books and papers in a fire-proof vault as provided by law; and that, in case of a fire in the present condition, the loss to the county would be beyond computation.

At the July term, 1898, the committee on grounds and buildings of the board of supervisors reported that they had examined the court house, and found that there was a general demand for additional room in the offices, and for more vault room; that, in view of the rotten brick, crumbling walls, and insecure foundations, it was a serious matter whether the walls could be repaired without constructing entirely new walls and new roof; that the building was cold in winter, and, for want of ventilation, hot in summer; that the court room is totally inappropriate for the uses, for which it is designated; that there are in fact no jury rooms of any convenience; that the vaults for the records are crowded to the last degree, because the tremendous gain in population has made demands, which were not anticipated when the court house was last reconstructed; that the board has wasted many times the cost of a new court house in idle repairs, which is now lost; that the reason therefor proceeded from the erroneous idea that, to renew the whole structure, would entail a heavier tax levy on the people; that the improvement has been delayed on that score when the facts are that the levy can only be seventy-five cents on the $100.00, and that rate has been laid for many years; that, if the extra money is put in in constructing a permanent building, and the necessary saving is made in the accounts, the county may have a new court house without additional taxation.    The report recommended that the board work on those lines, and that the walls and roof be re-built in whole or in part.

A resolution was then adopted by the board, appointing a special committee to obtain plans and specifica-

tions from some competent architect, and to advertise for bids for the repairing and reconstruction of the court house in accordance with such plans and specifications. The resolution, after reciting that it was made the duty of the county board of each county by statute to erect, when necessary, and keep in repair a suitable court house and provide proper rooms and offices for the several courts of the county, and for the county board, county clerk, county judge, circuit clerk, sheriff, coroner, State's attorney, county superintendent, county surveyor, clerks of courts, and to provide suitable furniture therefor, and reciting, that the present court house was not suitable, and had not the proper rooms, nor the necessary fire-proof vaults, and was improperly lighted and ventilated and dangerous, and a menace to the life and health of all persons attending upon the court; and reciting that complaint had been made by the officers of the county, and by the building and grounds committee, of the lack of room, etc., and declaring that the court house was wholly inadequate and out of keeping with the standing of the county; it was, thereupon, resolved, that the court house and offices be repaired by placing a modern system of heating therein; that the vaults be enlarged, so as to make room for the records, files, etc.; that the court room be remodeled so as to be convenient and suitable; that the roof be remodeled and repaired so as not to leak or be unsafe; and that suitable rooms for juries and for the county officers be constructed, enlarged and remodeled, so as to be convenient and of the proper capacity to transact business. A committee was then appointed, consisting of nine members of the board, to obtain plans and specifications; that public advertisements should be inserted asking for bids; that said committee be authorized to let the contract to the lowest responsible bidder; that the contract, if let, should specify the completion thereof at the earliest possible time.

This committee reported at the September meeting that they had employed C. W. Rapp, an architect, to prepare plans and specifications, which were open to public inspection, and their report was approved by the county board, and the county clerk was ordered to issue county orders, bearing seven per cent interest from date, to be used in payment of any and all accounts, made for repairing and construction of the proposed building according to the plans and specifications adopted; and it was further resolved, that the special committee be known, on the records and in its contracts, as the "Building committee of the Coles county board of supervisors," and that seventy-five per cent of the then present levy be, and it was appropriated for the repair of the court house, and the county clerk was directed to issue county warrants in anticipation of the collection of the taxes for the ensuing year.

September 20, 1898, the building committee reported that they had advertised for bids, and that defendant in error, Goehring, bid the sum of $85,727.00, he being the lowest bidder, and thereupon the contract was awarded to him, and his bond was approved and accepted, and the contract hereinbefore set forth was made with him. On September 28, 1898, possession of the court house grounds was delivered to Goehring, and he was to receive five per cent on the cost of the structure, of which the sum of $1285.95, was paid to him in cash.

The work was commenced under the supervision of Rapp, the architect, who reported to the board the progress of the work, and made estimates of the value of the work performed, and of the material placed in the building. On these estimates orders were from time to time issued by the county board on the basis of eighty-five per cent of the amount due on the estimate in accordance with the contract. These orders provided for seven per cent interest, and were sold to the usees in this case.

In December, 1898, a resolution was adopted by the board that the claim of S. S. Goehring for $3194.66, second monthly installment for repairing the court house, be audited and allowed, and the county clerk directed to draw and deliver to him an order in the following form:

"STATE OF ILLINOIS, }
    *Coles County.*    }

"This certifies that the county board of Coles county did on the 7th day of December, 1898, audit and allow S. S. Goehring the sum of $3194.66, on the second monthly installment for repairing the court house to be paid to him or his order twelve months after date hereof, together with seven per cent interest per annum, as provided in his contract for repairing the court house; this order to be paid out of any moneys in the county treasury not otherwise appropriated."

Other orders were issued for various amounts from time to time, the last being dated September 14, 1900, and the face of the orders without interest amounting to $82,004.62. The difference between $82,004.62 and $95,-204.31, the amount of the judgment, to-wit, $13,199.69, was for interest upon the orders.

On September 7, 1900, the building committee made the following recommendation: "We, your committee, after having carefully examined the repairs made upon Coles county court house would respectfully recommend that building be received, and that S. S. Goehring be paid in full for his contract." It was ordered that the recommendation and report be approved, and that the building be received, and that the keys of the court house be turned over to the chairman of the board of supervisors, and by him to the sheriff, and that the sheriff and chairman proceed to move the county officers into the court house at once, which was done. The circuit and county courts have held their sessions in the court house, as thus reconstructed, since that time, and all the county officers have occupied offices in the court house since September, 1900. The grand and petit juries have occupied rooms therein during the terms of court, and the

records of all the county officers have been kept therein since September, 1900.

Upon the hearing of the case before the trial judge without a jury, twelve propositions of law were held for plaintiff and four for the defendant. Three propositions of law submitted by the defendant below were modified by the court, and held as modified. Seventeen propositions of law submitted by the defendant below were refused by the court.

JOHN F. VOIGT, Jr., State's Attorney, (J. F. HUGHES, and A. J. FRYER, of counsel,) for plaintiff in error:

The obligation to do justice, resting upon corporations as on individuals, affords no ground for recovery for want of some wrongful act, negligence or default on the part of the county injuriously affecting the rights of the claimants. *Park Ridge* v. *Robinson,* 198 Ill. 584.

No estoppel arises against the county. *Hibbard & Co.* v. *Chicago,* 173 Ill. 99.

The indebtedness sued for is of the character, being a definite sum due at a future time and bearing interest, that provision by direct annual tax should have been made for its payment. Const. art. 9, sec. 12.

This provision of the constitution applies to indebtedness within the five per cent debt limit, as all indebtedness beyond that limit is absolutely prohibited. *Railroad Co.* v. *People,* 200 Ill. 553; *Springfield* v. *Edwards,* 84 id. 640; *Kankakee* v. *McGrew,* 178 id. 74.

D. T. MCINTYRE, also for plaintiff in error:

A county being organized solely for governmental and not for business purposes, has no inherent right to contract, generally. *Coquard* v. *Oquawka,* 192 Ill. 367; *Dement* v. *Rokker,* 126 id. 175; *Hewitt* v. *School District,* 94 id. 528.

As the laws here involved relate to the public revenue and the protection of the tax-payers, they should be construed liberally. Black on Interpretation of Laws, 328.

County officials derive all their powers from the statute. When not conferred in terms they do not exist. *Springfield* v. *Edwards*, 84 Ill. 626; *Cook County* v. *Lowe*, 23 Ill. App. 651.

The levy of seventy-five cents on the $100 must be sufficient for all purposes for which money may be raised by the county by taxation. A debt which it will not pay can not be contracted. Rev. Stat. chap. 34, sec. 25, clause 6; chap. 120, sec. 122.

In the absence of a vote of the people and when said levy for county purposes is exhausted the county board has no power to contract any further indebtedness.

The law forbidding the levy of a tax in excess of seventy-five cents on the $100 without a vote of the people is, in effect, the forbidding of the creation of a debt rendering such increased tax necessary. If the effect is forbidden, then the cause which created that effect is forbidden also.

When more money is wanted for county purposes than the avails of the levy "for county purposes," to enable the county board "to perform any of the duties imposed upon them by law," then they must call an election to determine the question of issuing bonds according to the requirements of this law. The duty of calling that election is mandatory although the language is permissive, a public interest being involved. *Ralston* v. *Crittendon*, 13 Fed. Rep. 512; Black on Interpretation of Laws, 341; *Supervisors* v. *United States*, 4 Wall. 435; *Galena* v. *Amy*, 5 id. 705; *Mayor* v. *Furze*, 3 Hill, 612; *People* v. *Supervisors*, 51 N. Y. 401; *Phelps* v. *Hawley*, 52 id. 23; *Wendel* v. *Durbin*, 26 Wis. 390; Endlich on Interpretation of Laws, secs. 306, 312; Sutherland on Stat. Const. secs. 461, 462.

A statutory provision that a thing shall be done to constitute an authority is equivalent to a prohibition against the authority unless those things shall be done. *Lovering* v. *McLaughlin*, 161 Ill. 425; *People* v. *Hutchinson*, 172 id. 498.

The county board has no power to do any act unless specifically authorized by law to perform the same. Any act beyond the power so granted is done without authority of law and is void. *Lewis* v. *Hadley,* 36 Ill. 433; *Penn* v. *Bornman,* 102 id. 530.

All persons proposing to deal with municipal officers must at their peril take notice of the extent of their powers. This is elementary.

JAMES. W. & EDWARD C. CRAIG, CRAIG & KINZEL, CHARLES C. LEE, and ANDREWS & VAUSE, (SWIFT, CAMPBELL & JONES, of counsel,) for defendant in error:

The constitutional question claimed by the plaintiff in error to be here presented is not an unsettled question. This court has passed on it and settled it. *Kankakee* v. *McGrew,* 178 Ill. 79; *Jackson County* v. *Rendleman,* 100 id. 382; *Railroad Co.* v. *People,* 200 id. 552; *Barnard* v. *Sangamon County,* 190 id. 119; *Rendleman* v. *Jackson County,* 8 Ill. App. 290.

The county board has full charge of the fiscal concerns of the county. The constitution provides: "Whenever any county shall adopt township organization, so much of this constitution as provides for the management of the fiscal concerns of the county by the board of county commissioners may be dispensed with, and the affairs of said county may be transacted in such manner as the General Assembly may provide." Const. 1870, art. 10, sec. 5.

Each county shall have power to make all contracts in relation to the concerns of the county. Hurd's Stat. chap. 34, sec. 24.

It is the duty of the county board to erect or otherwise provide, when necessary and the finances of the county will justify it, and keep in repair, a suitable court house, jail and other county buildings, and to provide proper rooms and offices for the accommodation of the several courts of record of the county, and for the county

board, county clerk, county treasurer, recorder, sheriff, and the clerks of said courts, and provide suitable furniture therefor; and it is only in counties not under township organization the question must be first submitted to a vote of the people. Hurd's Stat. chap. 34, sec. 26.

The limitation on the power of levying taxes and of borrowing money is not a limitation on the power to contract debts. *Hitchcock* v. *Galveston*, 96 U. S. 341.

The duty is imposed upon the county to build, as often as may be necessary, court houses and jails, and to cause the same to be repaired at the expense of the county. *Andrews* v. *Knox County*, 70 Ill. 69.

The phrases, "means of the county shall justify it," and "finances of the county shall justify it," amount to one and the same thing. The greater part of the counties of this State built court houses on credit while the statute contained the phrase, "means of the county shall justify it." The limitation of the power to levy taxes is not a limitation of the power to contract a debt. *Mills* v. *Gleason*, 11 Wis. 513; *Jackson County* v. *Rendleman*, 100 Ill. 382; *Rendleman* v. *Jackson County*, 8 Ill. App. 290; *Kankakee* v. *McGrew*, 178 Ill. 78; *Danville* v. *Water-Works Co.* 180 id. 244; *Railroad Co.* v. *People*, 200 id. 541; *Ketchum* v. *Buffalo*, 14 N. Y. 361; *Opinion of Justices*, 126 Mass. 567.

Where authority is given to do a thing, it carries with it, by implication, authority to use the necessary means. *Dutton* v. *Aurora*, 114 Ill. 144.

The drawing of the orders on the county treasury did not operate as a payment or change the character of the indebtedness. *People* v. *Johnson*, 100 Ill. 544.

This contract was within the power of the county in its private capacity, as contradistinguished from its governmental capacity, and having received the property and now using it, it is estopped from ever claiming that it illegally exercised a power, when called upon to pay for what it has received. *Barnard* v. *Sangamon County*, 190 Ill. 120; *Kneeland* v. *Gilman*, 24 Wis. 41; *Hitchcock* v.

*Galveston,* 96 U. S. 341; *East St. Louis* v. *Gas Light Co.* 98 Ill. 415; *Jasper County* v. *Ballou,* 103 U. S. 745; *Badger* v. *Drainage District,* 141 Ill. 541; *Bradley* v. *Ballard,* 55 id. 413; *Harvey* v. *Wilson,* 78 Ill. App. 544; Dillon on Mun. Corp. (4th ed.) sec. 574.

A suit will lie against a county under the common counts for the building of a jail or a court house where the work has been done and the house accepted. *Jackson County* v. *Hall,* 53 Ill. 441; *Clark County* v. *Lawrence,* 63 id. 35; *Maher* v. *Chicago,* 38 id. 272.

The power of the county board to contract a debt for a court house has no limit inside of five per cent of the assessed valuation. *Culberson* v. *Fulton,* 127 Ill. 38; *Carlyle* v. *Water Co.* 140 id. 451; *Kankakee* v. *McGrew,* 178 id. 78; *Danville* v. *Water-Works Co.* 180 id. 244; *Railway Co.* v. *Jacksonville,* 114 id. 562; *Railroad Co.* v. *People,* 200 id. 541.

The manner of exercising this duty is discretionary with the county board, and their decision is final and can not be reviewed. *People* v. *LaSalle County,* 84 Ill. 303; *Andrews* v. *Knox County,* 70 id. 65; *Sherlock* v. *Winnetka,* 59 id. 389; *Fitzgerald* v. *Harms,* 92 id. 373; *Kankakee* v. *McGrew,* 178 id. 78; *Supervisors* v. *Plaut,* 42 id. 324; *Vermilion County* v. *Knight,* 1 Scam. 97.

Courts will not interfere with the discretionary exercise of power by bodies to whom are given special powers and functions. Story's Eq. Jur. sec. 965; *Vermilion County* v. *Knight,* 1 Scam. 97; *DeWitt County* v. *Wright,* 95 Ill. 523; *VanWormer* v. *Mayor,* 15 Wend. 263; *LaSalle County* v. *Reynolds,* 49 Ill. 188.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The questions, presented by the record, arise out of the propositions of law as held and refused and modified by the trial court.

*First*—It is claimed on the part of plaintiff in error, the county of Coles, that the contract for the repair and

reconstruction of the court house, as set out in the state-
ment preceding this opinion, was void as having been ex-
ecuted without authority of law. The contract is claimed
to be void upon the alleged ground that, when .it was
made, the county of Coles had already assessed taxes to
the amount of seventy-five cents per $100.00 valuation,
and that, when the levy to that amount was reached and
exhausted in the payment of current expenses, the county
had no power to contract any further indebtedness, un-
less authorized by a vote of the people of the county.
Section 8 of article 9 of the constitution of 1870 is as fol-
lows: "County authorities shall never assess taxes, the
aggregate of which shall exceed seventy-five cents per
$100.00 valuation, except for the payment of indebted-
ness existing at the adoption of this constitution, unless
authorized by a vote of the people of the county." The
equalized valuation of the property of Coles county for
the year 1897 was $5,213,228.00 and the tax levy for that
year at seventy-five cents per $100.00 valuation produced
about $39,099.21. The equalized valuation of the prop-
erty of the county for the year 1898 was $5,167,602.00 and
the tax levy of seventy-five cents per $100.00 valuation
produced about $38,757.01. It is contended by plaintiff
in error that, whether the tax levy for 1897 or for 1898
is taken, it was inadequate to pay the ordinary running
expenses of the county, and that, when the contract in
question was made, there was a deficit which amounted
to a sum somewhere between $35,000.00 and $50,000.00.
It is, therefore, said that the county, having levied the
total amount which it was authorized to levy without a
vote of the people, and that, such amount so levied hav-
ing been required for the payment of current expenses
and borrowed money, the county was without authority ·
to go in debt to the amount of $85,727.00 for the con-
struction of a court house without submitting to the vote
of the people of the county the question, whether taxes
should be assessed to an amount exceeding seventy-five

cents per $100.00 valuation. In other words, the position taken is that the prohibition against an assessment of taxes, the aggregate of which shall exceed seventy-five cents per $100.00 valuation, is, by implication, a prohibition against the creation of a debt, or the making of a contract—when the amount of the levy of seventy-five cents per $100.00 valuation is necessary to pay current expenses or existing indebtedness—without a vote of the people, as required by said section 8 of article 9. The objection thus made makes the prohibition against the assessment or levy of taxes equivalent to a prohibition against the incurring of an indebtedness. The theory, upon which the objection is based, is that the incurring of an additional indebtedness under such circumstances necessitates the making of a levy of taxes in excess of the amount, named in section 8, as a means of paying such indebtedness. As counsel say in their brief: "The forbidding of the levy of the tax without a vote of the people is the forbidding of the creation of the debt rendering such increased tax necessary. The forbidding of the result is the forbidding of the means, which create that result. If the effect is forbidden, then the cause, which created that effect, is also forbidden."

A limitation upon the power to levy taxes is not necessarily a limitation upon the power to contract a debt. (*Hitchcock* v. *Galveston*, 96 U. S. 341; *Jackson County* v. *Rendleman*, 100 Ill. 379; *Andrews* v. *Knox County*, 70 id. 65; *Mills* v. *Gleason*, 11 Wis. 513; *Rendleman* v. *Jackson County*, 8 Ill. App. 287; *Town of Kankakee* v. *McGrew*, 178 Ill. 74; *City of Danville* v. *Danville Water Co.* 180 id. 235; *Baltimore and Ohio Southwestern Railroad Co.* v. *People*, 200 id. 541; *Ketchum* v. *Buffalo*, 14 N. Y. 361; *Opinion of Justices*, 126 Mass. 567; 1 Story on the Constitution, sec. 880; *City of Galena* v. *Corwith*, 48 Ill. 423.) Section 12 of article 9 of the constitution provides that "no county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner or

for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness. Any county, city, school district, or other municipal corporation, incurring any indebtedness as aforesaid, shall before, or at the time of doing so, provide for the collection of a direct annual tax, sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same." The equalized valuation of property in Coles county for the year 1897 being $5,213,228.00, five per cent of the same is $260,661.40, and the equalized valuation of the property in that county for the year 1898 being $5,167,602.00, five per cent of the same is $258,380.10. It is not claimed, or shown by the proofs in the record, that the indebtedness of Coles county on September 20, 1898, when the contract here in question was made, was more than $50,000.00 outside of the amount specified in the contract for the construction of the court house, made on that date. If the $50,000.00 be added to the $85,727.00, the amount for which the court house was contracted to be built, the sum would make $135,727.00. The latter amount is far less than either $258,380.10 or $260,661.40. Even if the indebtedness of the county should be put at $167,529.00, as it appears to be from some of the resolutions adopted by the county board in June, 1901, the total indebtedness of the county would still be less than either $258,380.10 or $260,661.40. Therefore, by incurring the indebtedness for the repairing and reconstruction of the court house, the county did not become indebted, if all prior indebtedness theretofore existing be included, to an amount exceeding in the aggregate five percentum on the value of the taxable property in the county, as ascertained by the last assessment for State and county taxes previous to the

making of the contract. The only prohibition against incurring indebtedness, which the constitution imposes, is.that embraced in section 12 of article 9. No county is allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five percentum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes, previous to the incurring of such indebtedness. In discussing the application of this section 12 to the incurring of indebtedness by towns in *Town of Kankakee* v. *McGrew*, 178 Ill. 74, we said (p. 81): "That the aggregate indebtedness of the town shall not exceed the constitutional limitation is the only restriction upon the power of a town to become indebted to discharge such duties devolved upon it by law." In *Culbertson* v. *City of Fulton*, 127 Ill. 30, we said (p. 38): "The indebtedness, however, can only be regarded as void to the extent of the amount of the excess over the constitutional limit. Up to and under that limit the indebtedness is valid. The inhibition operates upon the indebtedness, and not upon the form of the debt."

The proof is not altogether clear that the tax levy for the year 1898 of seventy-five cents per $100.00 valuation was entirely exhausted by the payment of the current expenses for that year. It is not entirely clear from the proof that, at the time the contract was made, Coles county was indebted in the sum of $50,000.00, or that its finances were not sufficient to pay the amount due upon the contract at the time therein specified, and also to pay what would be required for current expenses. Out of the money on hand at the time the contract was made the county paid $1144.97 thereon. The receipts of the county for taxes for the year 1898 amounted to $47,612.00; for 1899 to $43,850.00, and for 1900 to $48,129.00. Before the contract was made, to-wit, on September 14, 1898, a motion was made and adopted by the county board, "that seventy-five per cent of the present levy be hereby ap-

propriated for repairs of court house, and that the recommendations of the committee be concurred in and adopted as the act of the county board." At the same time a motion was made and adopted to the effect, that "the county clerk be directed to issue such county orders as the building committee may request, and to issue county warrants in anticipation of the collection of taxes for the ensuing year, as may be directed by the building committee." Seventy-five per cent or three-fourths of the tax levy for the year 1898, to-wit, $47,612.00, was $35,709.00. By its action the county board appropriated $35,709.00 out of the tax levy of 1898 for repairs upon the court house. The proceedings show that, in the opinion of the county board, the necessary repairs and reconstruction of the court house could be effected out of the levy of seventy-five cents per $100.00 valuation without additional taxation. The fact, that such fund of $35,709.00 may have been misappropriated, or applied to other purposes than the payment of the warrants or orders in question, does not affect the question of the power of the board to make the contract in question. (*County of Pope* v. *Sloan*, 92 Ill. 177).

*Second*—It is said, however, by counsel for plaintiff in error that, under the second sentence of section 12 of article 9 of the constitution, the county, before or at the time of making the contract, should have provided for the collection of a direct annual tax, sufficient to pay the interest on the debt incurred by the making of the contract, as it fell due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. We have held that the second sentence of section 12 "has reference to indebtedness the amount whereof has become fixed and absolute and the payment thereof deferred to a stated period in the future." (*City of Danville* v. *Danville Water Co.* 180 Ill. 235; *Town of Kankakee* v. *McGrew*, 178 id. 74.) We also said in *Baltimore and Ohio Southwestern Railroad Co.* v. *People*, 200 Ill. 541 (on p. 553): "In construing this part of section 12

we held that within the five per cent limit it was lawful for a municipality to contract debts without providing for a direct annual tax, unless payment of such indebtedness is deferred to a fixed future period, and which bears interest." It is a serious question, whether the debt, contracted by the contract here entered into, is a debt that falls due at a fixed future period and bears interest. Here, the work was "to be paid for during the construction to the parties of the first part, monthly on the basis of eighty-five per cent of the value of the labor performed and material in place in the building, as estimated by the architect, in interest-bearing county orders, bearing seven per cent interest per annum from date thereof, and the balance in interest-bearing county orders, bearing seven per cent interest per annum from date thereof, upon the completion and acceptance of the building." It is questionable whether this provision created a debt that fell due at a fixed period in the future. It would seem that the constitution contemplated a bonded indebtedness, or an analogous indebtedness, which draws interest each year and falls due all at one time, or falls due from year to year. In *Baltimore and Ohio Southwestern Railroad Co.* v. *People, supra,* the city of Flora had contracted to purchase an electric light plant, and had provided for the payment of a debt that the light company had on its plant in the sum of $13,000.00, payable in yearly installments of $1000.00 each, and bearing six per cent interest; and it was there claimed that this was a debt that came within this same constitutional inhibition; and we there held, that "the case at bar does not fall within the provisions of the section, as construed by this court." In *City of Danville* v. *Danville Water Co. supra,* it was held (p. 244) that "the obligation of a city under an ordinance, fixing the reasonable rate of annual rental to be paid for water hydrants, does not create that character of indebtedness, contemplated by section 12 of article 9 of the constitution of 1870, to pay

which that section requires a direct annual tax shall be provided at the time of incurring the indebtedness. Said section of the constitution, in the respect under consideration, has reference to indebtedness, the amount whereof has become fixed and absolute and the payment thereof deferred to a stated period in the future." (See also *Town of Kankakee* v. *McGrew, supra*).

It is further insisted on the part of the plaintiff in error that these orders or warrants, issued by the county board under the contract in question, were void as not being in compliance with section 2 of chapter 146a of the Revised Statutes. That section 2 provides as follows: "That, whenever there is no money in the treasury of any county, township, city, school district or other municipal corporation to meet and defray the ordinary and necessary expenses thereof, it shall be lawful for the proper authorities of any county, township, city, school district or other municipal corporation, to provide that warrants may be drawn and issued, against and in anticipation of the collection of any taxes, already levied by said authorities for the payment of the ordinary and necessary expenses of any such municipal corporation, to the extent of seventy-five percentum of the total amount of any said tax levy: *Provided*, that warrants drawn and issued under the provisions of this section, shall show upon their face that they are payable solely from said taxes when collected, and not otherwise, and shall be received by any collector of taxes in payment of the taxes, against which they are issued, and which taxes, against which said warrants are drawn, shall be set apart and held for their payment." (3 Starr & Cur. Ann. Stat.—2d ed.—pp. 3994, 3995). We are inclined to think that these warrants or orders are invalid, as not being in compliance with the statute above quoted. They recite upon their face that they are "to be paid out of any moneys in the county treasury not otherwise appropriated." They do not show upon their face that they are

payable solely from taxes already levied, and from said taxes when collected, and not otherwise. They can only be drawn and issued against and in anticipation of the collection of the taxes already levied, and must so show upon their face. In addition to this, they are required by the statute to be countersigned by the county treasurer, and they are not so countersigned. (Rev. Stat. chap. 35, sec. 10, par. 3; .1 Starr & Cur. Ann. Stat.—2d ed. —p. 1136). The proof is not clear that, when these warrants were drawn, there was any money in the treasury for their payment. In *Town of Kankakee* v. *McGrew, supra,* we held that when there is no money in the treasury, and there is no tax in course of collection, such a warrant or order is void. (See also *Strodtman* v. *County of Menard,* 56 Ill. App. 120; *Amos* v. *Burrus,* 11 id. 383; *Locke* v. *Davison,* 111 Ill. 19). We are of the opinion that the warrants or orders issued under the contract were void.

The contract price, as has already been stated, was $85,727.00. The judgment was rendered for $82,004.62, as principal, and $13,199.69, as interest. The sum of $82,004.62 is the amount of the certificates or warrants, which were surrendered upon the trial to be canceled, and was the entire amount of the contract price less $1144.97 that was paid in cash to the defendant in error, and less $2577.41, the amount of the two certificates or warrants that were not surrendered. It is claimed on the part of the plaintiff in error, that the judgment should be reversed because two orders were not surrendered. It is not claimed or shown that these two orders were under the control of the plaintiff below, or the usees in this suit. The court below, in rendering the judgment, did not include the two orders which were not surrendered. Of this the plaintiff in error cannot complain. There can never be another suit on this contract. Inasmuch as the orders are held to be void, the objection, that they were not surrendered for cancellation, is without force. Inasmuch as they are void, they cannot be enforced against the county,

and their possession, if surrendered, would be of no benefit to the county. (*Paul* v. *Kenosha*, 22 Wis. 261). Counsel for defendant in error, as we understand their brief, admit these orders to be void. They say in their brief: "In addition to this, if the orders are void, and every one agrees that that is true, adopting the language of the Supreme Court of Wisconsin in the case of *Paul* v. *Kenosha*, 22 Wis. 261, where the contention was made that certain bonds, held to be void, were not surrendered for cancellation, 'we are really at a loss to imagine what earthly benefit the possession of the bonds would be to the city.'"

It follows that, the orders, provided for in the contract, being void, the judgment below was erroneous to the extent of $13,199.69, which was the amount of interest allowed. The judgment should have been for only $82,004.62. The contract did not provide for the payment of interest, but provided for the payment of the amount therein named in orders, which were to draw interest. The orders being void, interest cannot be recovered, as the contract does not provide that the amount, for which the court house was to be repaired and reconstructed, to-wit, $85,727.00 should draw interest, but only that the county orders, in which that amount was to be paid, were to draw interest. We have held that "a municipal corporation, under the uniform ruling of this court, is not chargeable with interest on claims against it, in the absence of express agreement therefor, the only exception being where money is wrongfully obtained and illegally withheld by it." (*City of Danville* v. *Danville Water Co.* 180 Ill. 235; *City of Peoria* v. *Construction Co.* 169 id. 36; *Vider* v. *City of Chicago*, 164 id. 354; *City of Pekin* v. *Reynolds*, 31 id. 529; *City of Chicago* v. *People*, 56 id. 327). There is nothing in the proofs to bring the present case within such exception. The orders being out of the way as being invalid, there is no express agreement for the payment of interest, and, therefore, it was error in the trial court to allow the same.

*Third*—But, in the case at bar, the declaration contains the common counts, and declares for interest, and for an amount due upon an accounting. A suit will lie against a county under the common counts for the building of a jail, or a court house, where the work has been done and the house accepted. (*County of Jackson* v. *Hall*, 53 Ill. 440; *Maher* v. *City of Chicago*, 38 id. 266; *Clark County* v. *Lawrence*, 63 id. 32). Although the warrants or orders were here offered and received in evidence, yet the defendant in error did not rely upon them wholly as legal evidence of indebtedness, but introduced the records, kept by the county board, which showed that the amounts of these orders, as accounts and demands against the county, were presented to the board and found to be correct, and audited by the board as just demands against the county. As was said in *Town of Kankakee* v. *McGrew, supra:* "The record of these proceedings of the board was offered as evidence of an accounting and was accepted by the court as sufficient to sustain a right of recovery under the count of the declaration averring liability by reason of an accounting between the parties. * * * This record constitutes the best evidence as to the proceedings of the board, and it was produced before the court. It established *prima facie* an accounting between the parties. We find no evidence in the record tending to overcome the *prima facie* case thus made by" defendant in error.

In the present case, the defendant in error completed the court house to the satisfaction of the county authorities, and the latter accepted it and appropriated it to the use of the county. Their records also show that, when they accepted the building, they acknowledged the price fixed by the contract for the construction of the building to be due to the defendant in error. Where a contract has thus been performed, and nothing remains to be done but the payment of the money, a suit may be maintained on the common counts. Where the law charges a municipality with the performance of certain

duties, involving the creation of obligations and indebt-
edness, and authorizes it to exercise powers, which may
result in the creation of legal demands against it, it may
be necessary for it to perform these duties and exercise
these powers, even if there is no money in its treasury,
and no tax has been levied, or is in process of collection.
(*Town of Kankakee* v. *McGrew*, 178 Ill. 74). Where a stat-
ute, in authorizing a municipal corporation to exercise a
certain power, specifically regulates the mode, in which
that power is to be exercised, but the municipal authori-
ties exercise it in a manner different from that prescribed
by the statute, the municipality will be estopped from
setting up the irregular exercise of the power when it is
called upon to pay for what it has received, where the
proof shows that it has received and accepted the bene-
fit of the contract, thus irregularly entered into. (*West-
brook* v. *Middlecoff*, 99 Ill. App. 327).

Section 24 of chapter 34 of the Revised Statutes pro-
vides that "each county shall have power * * * to
make all contracts and do all other acts in relation to
the property and concerns of the county necessary to the
exercise of its corporate powers." (1 Starr & Cur. Ann.
Stat.—2d ed.—p. 1085). Where power is thus given to do
a thing, there is given at the same time, by implication,
authority to use the necessary means, by which that
thing can be done. (*Dutton* v. *City of Aurora*, 114 Ill. 138).

Section 26 of the same chapter 34 provides as follows:
"It shall be the duty of the county board of each county:
*First*—To erect or otherwise provide when necessary,
and the finances of the county will justify it, and keep
in repair, a suitable court house, jail, and other neces-
sary county buildings, and to provide proper rooms and
offices for the accommodation of the several courts of
record of the county, and for the county board, county
clerk, county treasurer, recorder, sheriff and the clerks
of said courts, and to provide suitable furniture there-
for. But in counties not under township organization,

no appropriations shall be made for the erection of public buildings, without first submitting the proposition to a vote of the people of the county, and said vote shall be submitted in the same manner and under the same restrictions, as provided for in like cases in section 27 of this act; and the votes therefor shall be 'For taxation,' specifying the object, and those against shall be 'Against taxation,' specifying the object." (1 Starr & Cur. Ann. Stat.—2d ed.—pp. 1089, 1090). The county of Coles is under township organization, and it is apparent from the reading of section 26 that it has authority to erect a court house without submitting the proposition as to such erection to a vote of the people. The county board is itself the judge of the necessity of building the court house. The duty imposed upon the board in reference to this matter is imperative, as shown by the use of the words "it shall be the duty." In *Andrews* v. *Knox County,* 70 Ill. 65, we said (p. 69): "Among the duties imposed by law upon the board of supervisors, and in imperative language, is, to build, as often as may be necessary, court houses and jails, or cause the same to be repaired in their respective counties, at the expense of such counties. About this they have no discretion. * * * The time when, the style, capacity and cost of such erections are wholly committed to them, with no responsibility to any power save the people." The word, "necessary," as here used, is not to be interpreted as referring to such measures as are absolutely and indispensably necessary, but as including all appropriate means, which are conducive or are adapted to the end to be accomplished, and which, in the judgment of the board, will most advantageously affect it. (*Juilliard* v. *Greenman,* 110 U. S. 421.) The word, "when," as used in section 26, precedes not only the word, "necessary," but also precedes the words, "the finances of the county will justify it." The board is not only to determine when it is necessary to erect the building, but also when the finances of the

county will justify it. The words "when the finances of the county will justify it," cannot be construed to mean that the county has no power to make a contract for the repair or reconstruction of a court house, unless it has the cash in its treasury. The fifth paragraph of said section 26 shows that "finances" include all debts and liabilities of every description, and the assets, and other means of discharging the same. In passing upon the question, the county board takes into consideration everything in connection with the fiscal affairs of the county, and if, in good faith and without fraud, it determines that the finances justify the erection of the court house, the person, with whom the contract is made to build the same, is not bound to inquire into the correctness of their determination. The conclusion, which the board comes to upon the subject, is the one that must control. Here, the board was confronted with such a condition of affairs that it seemed proper and right to provide for the repairing and reconstruction of the court house. The old court house was not merely unsuitable for the purposes, for which it was erected, but is shown "to have been dangerous and a menace to the life and health of all persons required to be in attendance upon the court." The board found that the cost of the construction of the court house could be met by the tax of seventy-five cents on the $100.00, and while the result may have proved that they were mistaken upon this subject, yet there is nothing to show that there was any want of good faith or any fraud on the part of the board. Inasmuch as it was the legal duty of the county board to repair and reconstruct the court house, it was proper that it should discharge that duty and exercise the power conferred upon it by the statute, it having clearly appeared that the performance of that duty would not necessitate an expenditure to an amount which, together with existing indebtedness of the county, would exceed the five per cent limitation imposed by the constitution. As was said

in *Town of Kankakee* v. *McGrew, supra:* "The restrictions of said sections 1 and 2 of chapter 146a are upon the power of the town to draw warrants for the payment of money,—not upon its power to incur obligations and indebtedness." The same rule would apply to a county, as to a town.

Statutes tending to effect objects of great public utility are to receive liberal and benign interpretation. (Potter's Dwarris on Statutes, 203, note). Section 27 of said chapter 34 provides that "whenever the county board shall deem it necessary to assess taxes the aggregate of which shall exceed the rate of seventy-five cents per $100.00 valuation * * * the county board may * * * provide for the submission of the question * * * to a vote of the people," etc. The statute thus leaves it to the county board to determine when it shall be necessary to submit the question there indicated to the people. "Where the county court of a county is invested with jurisdiction and power to order the erection and repair of bridges, and is charged with the duty of taking care of and maintaining the poor, a limitation in the general revenue laws as to the rate or amount of taxes, which may be annually levied for bridges and paupers, does not measure the legal power of the county court to bind the county by contracts otherwise binding for those purposes." (Beach on Public Corp. p. 792; see also *County of Christian* v. *Merrigan*, 191 Ill. 484).

In *Fitzgerald* v. *Harms*, 92 Ill. 372, Harms had a contract for work in reference to the foundation of the court house of Cook county, and there the court refers to the powers of the county, as contained in sections 24, 25 and 26 of chapter 34 above referred to, and says (p. 375): "We shall not stop to inquire whether the claim of the contractor was meritorious or not. We have referred briefly to some of the leading facts, for the purpose of showing that the claim was one of a character that came within the jurisdiction and power of the county board to settle

and adjust.  Under the statute the board of commissioners had the power to erect a court house, it had the authority to make all contracts necessary to the exercise of its corporate powers, and it was likewise entrusted with power to examine and settle all accounts against the county and all accounts concerning the receipts and expenditures of the county."  And the lower court was there sustained in its refusal to enjoin the county board, which was shown not to have acted fraudulently, or corruptly, or by collusion, from settling and adjusting the claim against the county there under consideration.  (See also *Jackson County* v. *Rendleman*, 100 Ill. 379;  *County of LaSalle* v. *Milligan*, 143 id. 321;  *Seagraves* v. *City of Alton*, 13 id. 366;  *County of Vermilion* v. *Knight*, 1 Scam. 97).

In *County of Jackson* v. *Hall*, 53 Ill. 440, it was held that the county of Jackson was estopped from denying liability, although there was no contract made for the building of a jail, inasmuch as the jail was accepted by the county authorities and used by them when completed; and it was there said (p. 443): "The county judge and his associates are empowered by law to provide a sufficient county jail, whenever the means are such as to justify it. * * * Having such power, and having received the jail and issued bonds for its payment, the county thereby becomes liable and cannot avoid the action of the court."

In *Hitchcock* v. *Galveston*, 96 U. S. 341, where a city agreed to pay for sidewalks in city bonds and the bonds were held to be invalid, it was decided that the city was liable upon its contract, and that, although it had agreed to pay in a way in which it had no power to pay, yet, having received the property, it was estopped to deny its power to contract; and it was there said by the Supreme Court of the United States: "It is enough for them [the plaintiffs] that the city council have power to enter into a contract for the improvement of the sidewalks; that such a contract was made with them; that under it they have proceeded to furnish materials and do work,

as well as to assume liabilities; that the city has re-
ceived and now enjoys the benefit of what they have
done and furnished; that for these things the city prom-
ised to pay, and that, after having received the benefit
of the contract, the city has broken it."

It makes no difference that the contract in the case
at bar provided for payment in county orders, and that
these county orders are invalid. In *Hitchcock* v. *Galveston*,
*supra*, it was said: "If payments cannot be made in bonds
because their issue is *ultra vires*, it would be sanctioning
rank injustice to hold that payment need not be made
at all. Such is not the law. The contract between the
parties is in force, so far as it is lawful."

As was said in *Badger* v. *Inlet Drainage District*, 141 Ill.
540: "The doing of the thing in a proper way is a legiti-
mate charge upon the revenues of the municipality; and,
so, when it is done and is accepted and enjoyed by the
municipality, the municipality gets what it had author-
ity to get in a different way, and it should, therefore, pay
for it what it would have had to pay, had it got it in the
right way." (See also *Town of Bruce* v. *Dickey*, 116 Ill. 527;
*Maher* v. *City of Chicago*, 38 id. 266; *City of Chicago* v. *Norton
Milling Co.* 196 id. 580).

*Fourth*—It is claimed by the plaintiff in error that this
judgment cannot be sustained, because the proof shows
that there were liens to the amount of about $12,000.00,
filed by certain sub-contractors against the warrants and
orders, or money, due the contractor upon the erection of
the court house, as provided by section 24 of chapter 82
of the Revised Statutes, being the Mechanics' Lien act,
(2 Starr & Cur. Ann. Stat.—2d ed.—p. 2572,) and which
section 24 was recently passed upon by this court in *West
Chicago Park Comrs.* v. *Western Granite Co.* 200 Ill. 527.

So far as the warrants or orders are concerned, the
liens can be of no avail, inasmuch as such warrants or
orders are here held to have been invalid. This suit
is brought for the purpose of determining whether the

county is liable to pay to the contractor for the benefit of the usees the money due by the terms of the contract. The filing of the claims for these liens cannot prevent defendant in error from obtaining judgment. A different question may arise when the time comes for the county to pay the money due upon the judgments. These claimants of liens, even if the defendant in error is indebted to them, would obtain nothing if the defendant in error should not be successful in this litigation. In other words, the success of the defendant in error in this litigation is for the benefit of the claimants of liens. The question here is whether the county owes money to the defendant in error, and not whether the county owes money to the lien claimants. The latter have no direct claim against the county. Their only claim is a lien upon the money that is to be paid to the defendant in error, and if the amount of the lien claims were deducted from the amount of the judgment, and the claimants should enforce their liens against the money that would be coming to the defendant in error on this judgment, defendant in error would be obliged to pay double the amount of the liens. (*Zimmerman* v. *Wead*, 18 Ill. 304; *Tedrick* v. *Wells*, 152 id. 214).

Our conclusion is, that the judgment of the court below was correct to the extent of $82,004.62, but that it was erroneous in allowing interest upon the orders or warrants in question to the amount already stated. Therefore, the judgment of the circuit court of Coles county is affirmed as to the sum of $82,004.62, and reversed as to the balance thereof, consisting of such interest as aforesaid. It is not necessary, however, to remand the cause to the lower court, but judgment is here entered for $82,004.62, together with interest thereon at the legal rate from the date of the entry of the judgment in the court below, to-wit, April 12, 1902.

*Partly affirmed and judgment here.*