THE TOWN OF KANKAKEE

*v.*

J. F. McGREW.*

*Opinion filed February 17, 1899.*

1. CONSTITUTIONAL LAW—*section 12 of article 9 of the constitution, concerning municipal indebtedness, construed.* Section 12 of article 9 of the constitution, requiring a municipal corporation, before or at the time of incurring an indebtedness, to levy a direct annual tax, refers only to an interest-bearing indebtedness payable at a fixed time in the future.

*The case of *Town of Kankakee* v. *Legris* is also disposed of by this opinion, viz.:

Per CURIAM: It was stipulated by the parties this cause should be determined and governed by the decision rendered by this court in the case of *Town of Kankakee* v. *McGrew*. The said cause of *Town of Kankakee* v. *McGrew* having been carefully considered and the judgment therein appealed from affirmed, the judgment here appealed from is also affirmed.

2. MUNICIPAL CORPORATIONS—*city may incur indebtedness without having money in treasury.* The power of a municipal corporation to incur indebtedness in discharging obligations imposed by law, such as caring for the poor, is not dependent upon its having money in its treasury or having a tax in process of collection, or upon the authority of a prior vote of the people.

3. EVIDENCE—*record book of town auditors is prima facie evidence of claims allowed.* The book in which the proceedings of the board of town auditors are required to be kept by section 10 of article 13 of the Township Organization act (Laws of 1879, p. 316,) is the best evidence of the claims and demands allowed by the board, and is *prima facie* evidence of an account stated.

4. PAUPERS—*overseer of poor may relieve destitute persons not ascertained by law to be public charges.* The overseer of the poor may relieve residents of the town in destitute circumstances without awaiting the action of the State's attorney and the result of proceedings in court to ascertain whether such persons are proper subjects for public support.

5. SAME—*overseer of poor may pledge credit of town for supplies for destitute persons.* If there are no funds on hand for the purpose, the overseer of the poor may pledge the credit of the town to parties furnishing supplies to poor persons upon his order, and such parties, in the absence of fraud or knowledge to the contrary, may hold the town liable without proving that the persons supplied were legally public charges.

6. SAME—*overseer's determination as to who are entitled to relief is an official act.* The determination by the overseer of the poor as to who are entitled to relief is an official act, which is binding upon the town so far as those are concerned who in good faith furnish supplies upon the strength of his order.

MAGRUDER, J., dissenting.

APPEAL from the County Court of Kankakee county; the Hon. EBEN E. GOWER, Judge, presiding.

This was assumpsit by the appellee, against the appellant town. The declaration contained the common money counts, a common count for goods, wares and merchandise, a like count for work and labor done and material provided, and a common count in account had and stated. In addition to a breach in the ordinary form the declaration alleged demand had been made on the treasurer of the said town for payment of the alleged items

of indebtedness. The general issue, a special plea and a plea of the Statute of Limitations were filed. The special plea was as follows:

2. "That the plaintiff should not have his aforesaid action against it, the defendant, because it says that at the time and place when and where it is alleged the defendant became and was indebted to said plaintiff, said defendant then and there was a public *quasi* corporation, and then and there had no money in its treasury with which to pay the same; and defendant further avers that before and at the time of incurring the said alleged indebtedness said defendant had not provided, nor did then provide, for the collection of a direct annual tax sufficient to pay and discharge the said alleged indebtedness within twenty years, or any period of time, from the time alleged of contracting the same; and defendant further avers that said alleged indebtedness was not incurred by nor in compliance with any vote of the people of said town of Kankakee which may have been had prior to the adoption of the constitution of 1870 of said State of Illinois, in pursuance of any law providing therefor; and this the defendant is ready to verify, wherefore it prays judgment," etc.

The court sustained a demurrer to the special plea and the appellant town elected to abide the plea. The cause was submitted to the court without a jury. The issues were found for the appellee and judgment entered in his favor for $763.70, to reverse which this appeal is prosecuted.

W. R. HUNTER, for appellant:

Incurring debts is not an incident to the existence of a *quasi* public corporation, and cannot be exercised unless conferred by law. *Law* v. *People*, 87 Ill. 385.

Persons dealing with corporations of this character must see that such corporations have power to perform. *Law* v. *People*, 87 Ill. 385.

Section 20 of chapter 107 (Pauper act) does not authorize the overseer of the poor to incur a debt against the town, and in relieving the poor as required by law he cannot go beyond the sum provided by the proper authorities for that purpose, so as to bind the town.

Under the constitution no person can bind the town, in any manner or for any purpose, unless there is money in the treasury to pay the same, or before or at the time some provision is made for the collection of a direct annual tax to pay it. *Highway Comrs.* v. *Newell*, 80 Ill. 587; *Brauns* v. *Peoria*, 82 id. 11; *Springfield* v. *Edwards*, 84 id. 626; *Law* v. *People*, 87 id. 385; *East St. Louis* v. *People*, 124 id. 655.

If the board of town auditors went through the form of allowing a claim against the town that was illegal the town is not bound thereby. *Lyons* v. *Cook*, 9 Ill. App. 543; *Purcell* v. *Bear Creek*, 39 id. 499; 138 Ill. 524.

GRANGER & DAVIDSON, for appellee:

Unless an indebtedness in excess of five per cent of the assessed valuation of a town has been created, no provision for levying an annual tax is necessary under section 12 of article 9 of the constitution. *Carlyle* v. *Water Co.* 140 Ill. 445.

The obligation of a town or city to support its poor is not only a moral but also a legal obligation, which can be enforced in law. *Seagroves* v. *Alton*, 13 Ill. 366; *Supervisors* v. *Plaut*, 42 id. 324; *Supervisors* v. *Reynolds*, 49 id. 186.

While, under later statutes, towns have the right to make rules governing the support of the poor, they can not, by a failure to make such rules or by making unreasonable ones, avoid their liability in that respect. *Perry County* v. *DuQuoin*, 99 Ill. 479; *Fayette County* v. *Morton*, 53 Ill. App. 552.

The overseer of the poor is the judge of who is entitled to support from the town, and the town is bound by his action, in the absence of fraud or collusion. *Supervisors* v. *Plaut*, 42 Ill. 324.

The audit of the board of town auditors, in the absence of fraud, is binding on the town, and the order or certificate given appellee had at least all the effect of an account stated between individuals. *Cook County* v. *Ryan*, 51 Ill. App. 190; *Cook County* v. *Barsaloux*, 54 id. 209.

That account stated is recognized in Illinois between individuals and a public corporation. *Kinney* v. *People*, 3 Scam. 359; *Washington County* v. *Parlier*, 5 Gilm. 235; *Cook County* v. *Ryan*, 51 Ill. App. 190.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The complaint the court erred in holding the special plea did not present a legal defense to the action involves the construction of certain provisions of the constitution and of certain statutes in relation to the power of the appellant town to incur indebtedness.

It is urged that under the provisions of section 12 of article 9 of the constitution of 1870 the town could not lawfully become bound for the payment of any indebtedness unless it should, before incurring such indebtedness, or at the time of doing so, have provided for the collection of a direct annual tax for the payment of such indebtedness. Said section 12 of the constitution is as follows: "No county, city, township, school district or other municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness. Any county, city, school district or other municipal corporation incurring any indebtedness as aforesaid, shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years from the time of contracting the same. This section shall

not be construed to prevent any county, city, township, school district or other municipal corporation from issuing their bonds in compliance with any vote of the people which may have been had prior to the adoption of this constitution, in pursuance of any law providing therefor."

While it may reasonably be insisted the words "any indebtedness," employed in the construction of the second sentence of this section of the constitution, are broad enough, in general meaning, to include every species of indebtedness within the legal capacity of the appellant town to incur, yet the further reading of the sentence renders it manifest the annual tax required to be raised is only to be applied to the discharge of that character of indebtedness which does not fall due until a future time, and which bears interest. The constitutional intent is plain. It is to control towns with reference to that species or character of indebtedness the payment whereof has been deferred to a fixed time in the future, and which bears interest. As to such indebtedness the provision of the sentence is, the payment of the principal thereof shall not be deferred beyond a period of twenty years, and that before or at the time of contracting any such indebtedness the town shall provide for a direct annual tax sufficient to pay the interest as such interest falls due. If carried into full operation these requirements would have no application to current indebtedness or obligations of the town the payment of which had not been deferred to some fixed period and was not interest bearing. The true construction of the sentence therefore is, that the words "any indebtedness," before referred to, mean any indebtedness of the character affected by the provisions of the sentence. The first sentence of the said section operates to prohibit a town from becoming indebted to an amount in the aggregate exceeding five per centum on the value of the taxable property within its limits, as ascertained by the last assessment for State and county taxes. Within that limit debts within the

lawful power of the town to incur may be contracted without providing for a direct annual tax, unless payment of such indebtedness is deferred to a fixed future period.

Nor is it true that the town may not become lawfully indebted at a time when it has no money in its treasury and no tax then levied and in the course of collection. In such condition the town cannot draw warrants on its treasurer, for the issuing of warrants in that state of case is prohibited by sections 1 and 2 of chapter 146 *a.* (Hurd's Stat. 1889, p. 1393.) The law, however, charges upon towns such as the appellant corporation the performance of certain duties which involve the creation of obligations and indebtedness, and authorizes them to exercise powers which may result in the creation of legal demands against them. The performance of these duties may be imperative, and the exercise of such powers may be desirable and advisable at times when the treasury of the town is empty and when there is no tax in process of collection; yet the town may not for these reasons avoid the performance of the duties legally cast upon it, nor is it deprived of the right to exercise powers of which it is legally possessed. In such cases a town should discharge its legal duties, and may exercise its lawful powers unless so doing would necessitate expenditures in an amount which, together with existing indebtedness of the town, would exceed the limitation imposed by the constitution. The restrictions of said sections 1 and 2 of chapter 146 *a* are upon the power of the town to draw warrants for the payment of money,—not upon its power to incur obligations and indebtedness.

Some of the items included in the amount of the judgment here sought to be reversed were for supplies of coal, etc., for the poor of the town. Section 15 of chapter 107 of the Revised Statutes, entitled "Paupers," is as follows: "Every town in counties in which the poor are supported by the towns (as provided by law) shall relieve and

support all poor and indigent persons lawfully resident therein, except as herein otherwise provided." A town having such duty to poor and indigent persons lawfully resting upon it could not refuse to discharge the duty upon the ground it had no money in its treasury and had no tax in course of collection, but, upon the contrary, should relieve and care for such poor and indigent persons, and in doing so may create obligations and indebtedness to enforce and collect which the aid of the courts of law may be successfully invoked. We are not aware of any provision of the statute which requires that a town, in such state of case, shall be authorized by a vote of the legal electors of the town to contract or incur indebtedness. That the aggregate indebtedness of the town shall not exceed the constitutional limitation is the only restriction upon the power of a town to become indebted to discharge such duties devolved upon it by law.

Upon the hearing of the case it appeared the appellee presented to the board of auditors of the appellant town, on the first day of April, 1898, accounts against the town in favor of divers persons, amounting in the aggregate to the amount of the judgment herein appealed from, and that the same were audited by the said board and found to be correct, and a warrant for that amount was ordered to be drawn, and was drawn, in favor of the appellee upon the treasurer of the said town for the payment thereof. There was then no money in the treasury and there was no tax in the course of collection, and for those reasons the warrant was void. It was stipulated between the parties that the fact that the total of appellee's claim was made up of demands of other persons against the town transferred to him should not be considered, but that the appellee should be conceded to be entitled to recover if the original holder of the claim could have recovered. The warrant was offered and received in evidence, but the appellee did not rely upon it as legal evidence of indebtedness, but introduced the rec-

ord kept by the board of auditors showing that various accounts and demands against the town, which constituted, in the aggregate, the amount the warrant professed to order to be paid, were presented to the board of auditors and found to be correct and audited by the board as just demands against the town, and that the total therefor was due and payable to appellee. The record of these proceedings of the board was offered as evidence of an accounting, and was accepted by the court as sufficient to sustain a right of recovery under the count of the declaration averring liability by reason of an accounting between the parties.

The statute requires the board of auditors shall make a certificate specifying the nature and amount of all claims and demands allowed at each meeting of the board, and shall deliver such certificate to the town clerk, to be kept on file by said clerk "for the inspection of any of the inhabitants of such town." (Hurd's Stat. 1889, par. 124, chap. 139, entitled "Township Organization.") It seems such certificate was not made in this instance. Appellant contends the certificate so required is the only legal evidence of the action of the board. This is a misapprehension. The purpose to be served by this certificate is to furnish information to the inhabitants of the town as to the indebtedness of the town. Paragraph 126 *a* of said chapter 139 provides that a record of the proceedings of the board of town auditors shall be kept in a book to be provided for that purpose. This record constitutes the best evidence as to the proceedings of the board, and it was produced before the court. It established *prima facie* an accounting between the parties. We find no evidence in the record tending to overcome the *prima facie* case thus made by appellee.

It appeared some of the demands included in the amount audited by the board in favor of the appellee were for coal, and perhaps other supplies, furnished to poor and indigent persons in the town. The third propo-

sition presented by the appellant to be held as the law applicable to such demands was refused by the court. This action of the court is assigned as for error. The contention of the appellant upon the point is stated in the brief in its behalf as follows: "The third proposition presents the question whether the overseer of the poor can bind the town by giving orders to persons who do not come within the description of 'poor persons,' as defined by the Pauper act of this State. Our position is, that when a party seeks to obtain a judgment against a town for goods furnished to residents therein he must show that the goods were furnished to such persons as the law contemplates are proper subjects for public support."

In the county of Kankakee, which embraces the appellant town, the duty of providing for the poor rests upon the various towns. Section 1 of chapter 107 of the Revised Statutes, entitled "Paupers," provides that every poor person who shall be unable to earn a livelihood on account of idiocy, lunacy or other unavoidable cause shall be supported by certain specified relatives in order as stated; but section 20 of the same act provides the overseers of the poor shall have the care and oversight of all such persons in their towns as are unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy or other unavoidable cause, and as are not supported by their relatives or at the county poor house, and shall see they are suitably relieved, subject to such restrictions and regulations as may be prescribed by the town. The overseer cannot refuse to fulfill the duties thus cast upon him upon the ground the unfortunate person entitled to assistance has relatives who are liable, under the first section of the chapter, to provide and care for them. Section 3 of the same chapter makes it the duty of the State's attorney to enforce performance by such relatives of the duty cast upon them by law to assist such poor or indigent persons, and the succeeding sections, to and including section 12, direct in detail the course of proced-

ure in the courts against such relatives and the manner of enforcing their obligation to their unfortunate poor kinsmen. The necessities of the unfortunate class designed to be relieved by the law do not, however, admit of delay. Pain and suffering must be relieved; food, fuel, clothing and shelter must be furnished to those in need; the dead must be buried. Prompt relief is imperative, and the overseer of the poor may not await the action of the State's attorney and the termination of proceedings in court, but, as the representative of the town, must care for those who are so unfortunate as to be entitled to assistance from the public. The express provisions of section 20 make it the duty of such overseer to relieve the wants of those who fall within the legal denomination of paupers, and "as are not supported by their relatives or at the county poor house." If there be no funds for the purpose, the overseer must, of necessity, have power to pledge the credit of the town in that behalf, and may procure supplies for such poor persons from merchants, grocers and tradesmen, who, in the absence of fraud or actual knowledge to the contrary, may deliver such supplies upon the order of the overseer and hold the town liable therefor without being required to show that such person so receiving support was in fact actually entitled thereto. It is the official duty of the overseer to determine as to that, and his action must conclude the town, so far as those who in good faith furnish supplies upon the faith of it are concerned. *Board of Supervisors* v. *Plaut*, 42 Ill. 325.

The special plea did not present a good defense to the action, nor did the court err in ruling as to the admissibility of evidence or as to the rules of law applicable to the case.

The evidence supported the finding and judgment of the court. The judgment must be and is affirmed.

*Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting.