PATRICK TRAINOR *vs.* WILLIAM M. LEE, City Treasurer.

JUNE 29, 1912.

PRESENT: Johnson, Parkhurst, and Sweetland, JJ.

*(1)   Municipal Corporations.   Current Expenses.   Municipal Officers.*
Services of a chief of police and town sergeant are within that class incidental to the ordinary daily affairs of a municipal corporation, and the compensation therefor falls within the current expenses of such corporation.

*(2)   Municipal Corporations.   Current Expenses.   Municipal Officers.*
The services of a dog officer, under the statutes, are incidental to the management of the affairs of a town as a proper police regulation and the compensation therefor fixed by law is to be deemed one of the current expenses of the town.

*(3)   Municipal Corporations.   Statutory Fees.   Debt Limit.*
Whether or not a town has exceeded its debt limit has no application as to fees fixed by statute as compensation for a duty imposed by law.

*(4)   Municipal Corporations.   Statutory Fees.   Debt Limit.   Evidence.*
In an action brought by plaintiff for services rendered by him as chief of police, town sergeant and dog officer, evidence offered to show that the debt limit of the town had been exceeded was immaterial, in the absence of proof showing that the town had not the means in its treasury to pay the claims or that it would not have the means from its current revenues.

*(5)   Evidence.   Record Evidence.*
In an action to recover for the services of a municipal officer oral evidence offered by defendant's counsel in person, that there was no appropriation made by any proper authority from which payment of plaintiff's claim could be made, was properly excluded, where the record evidence was neither produced nor the lack of such evidence accounted for.

ACTION ON THE CASE.   Heard on exceptions of defendant, and overruled.

PARKHURST, J.   This is an action of the case to recover the sum of four hundred and forty-three dollars and twenty-one cents ($443.21), for services rendered by the plaintiff as Chief of Police, Town Sergeant, and Dog Officer of the town of Cranston and the city of Cranston.

The suit was commenced in the District Court of the Eighth Judicial District and, on the entry day of the writ, a jury trial was claimed by the plaintiff, and the case certified to the Superior Court.   The case was tried before a justice of the Superior Court and a jury on the second day of November, A. D. 1911, and a verdict returned for the plaintiff for the full amount of his claim, with interest and costs, amounting to $484.74, by direction of the court.

The defendant now comes before this court upon bill of exceptions, the exceptions being to the direction of the verdict for the plaintiff, and also to the exclusion by the court of testimony offered by the defendant to show that at the time when the services were rendered by the plaintiff the town of Cranston was indebted in excess of the statutory limit of four (4) per cent. of the taxable property of the town; and to the further exclusion of testimony of counsel for the defendant who offered himself as a witness for the defendant, that no appropriation of money was made from which the claims of the plaintiff could properly be paid.

The proof showed that the plaintiff was the duly elected and qualified Chief of Police, Town Sergeant and Dog Officer of the town and city of Cranston; Town Sergeant from April 1 to April 19, 1909; Chief of Police, April 18 to June 3, 1910, and Dog Officer in April, 1910; and that the services for which compensation was claimed were actually rendered by him between those dates, and that the claims had been duly presented to the town council of the town of Cranston in part, and to the city council of the city of Cranston as to the whole, and that no part thereof had been paid; and there was no dispute as to amounts claimed, as being correct.

The defendant pleaded the general issue, and two special pleas:  (1) setting up that the town of Cranston was in-

debted in excess of its debt limit fixed by statute (Chap. 1428, Jan., 1895), at four per cent. of the taxable property of the town; (2) setting up that at the time when the claims of the plaintiff for services are alleged to have been incurred and to have accrued, there was no authority to incur the same by virtue of any vote, resolution, etc., or by virtue of any authority on the part of any officer or agent of the town.

The principal contention of the defendant was made under its first special plea, that inasmuch as the town of Cranston was, at the time when the services were rendered, indebted in excess of its four per cent. debt limit, it could not lawfully incur such obligations to the plaintiff as he claims, because that would be to incur a debt in excess of the statutory limit. To that plea the plaintiff duly filed its demurrer, on the following grounds:

"First.   That it does not appear in and by said plea that there was no money in the treasury of the Town of Cranston at the time said indebtedness was incurred which had been specially set apart for the payment of claims like the one in suit:

"Second.   That it does not appear in and by said plea that the said town at that time had no money in its treasury to meet this indebtedness:

"Third.   That it does not appear in and by said plea that the said town at that time would be unable to meet this indebtedness from its current revenues."

This demurrer was sustained by the Presiding Justice of the Superior Court, and to this ruling the defendant took no exception.   Accordingly when the defendant at the trial of the case before the jury offered evidence tending to show that the town had exceeded its debt limit, the trial judge ruled in accordance with the said decision of the Presiding Justice on the demurrer, and excluded the evidence offered as immaterial.   We think that, if the defendant desired to bring this question before this court, it would have been the proper course of procedure to have reserved exception to the ruling on the demurrer; and to have brought such exception

before us in its regular course. But the defendant, not following such procedure, saw fit to attempt to offer such evidence, under the general issue, and now insists that such evidence, showing that the plaintiff's claims are wholly void, was properly admissible under the general issue, in accordance with the liberal rules governing pleading in this State. Without deciding this question, however, on technical grounds, we think that, in view of the importance to the towns of this State of the question as to the admissibility and effect of such testimony, and in view of the novelty of the question in this State, we are justified in treating the question as fairly before us on the specific exception; and we proceed therefore to its consideration.

It is to be observed at the outset that, as to the services of the plaintiff, here in suit, as Chief of Police and Town Sergeant, such services fall naturally and inevitably within the class of services properly and necessarily incidental to the ordinary daily affairs of a municipal corporation, and that the compensation therefor naturally and inevitably (1) falls within the current expenses of such a corporation. As to the services rendered as dog officer, it is to be observed that Chap. 135, Gen. Laws, 1909, "Of Dogs," by Section 12, provides as follows: "The town sergeant of each town or such special constables as the town council of such town may appoint, annually in the month of April shall ascertain and make a list of the owners or keepers of dogs in such town and return such list to the town clerk on or before the last day of May, and shall receive from the town treasury the sum of twenty cents for each dog so listed," . . . ; While by Section 13 provision is made for killing dogs not licensed and a fee of two dollars for each dog killed and buried is to be paid out of the town treasury; so that by the express provisions quoted, it is made one of the annual duties of the town to make such a list of owners of dogs, and the fees therefor and for killing and burying are expressly fixed by law and payment therefor is expressly provided to be made out of the town treasury. Such service is therefore to be

(2) deemed to be properly and necessarily incidental to the management of the affairs of the town as a proper police regulation, and the compensation therefor fixed by law must be deemed to be one of the current expenses of the town.

The question here involved has never been squarely brought before this court, but it was, among other questions, incidentally considered in the case of *McAleer* v. *Angell*, 19 R. I. 688, where upon a suit in *assumpsit* to recover for stone furnished the town of North Providence, by the plaintiff, the defendant filed a special plea in bar setting up that "at the time of contracting said debt the said town had incurred debts to the limit allowed by law, and also that there was no money in the hands of the defendant town treasurer at that time, nor has there been any money in his hands at any time since then, with which said debt could have been paid.

"To this plea the plaintiff demurs on the grounds: (1) that it is bad for duplicity; (2) that the fact that the town had reached its debt limit is not a good defence, because the duty of the town to keep its highways in repair is a statutory one, and it is not suspended by reason of the fact that the town had reached its debt limit; (3) because, as the town council of said town, on October 22, 1894, allowed the plaintiff's claim and ordered it paid, the town is estopped from denying the validity thereof.

"We do not think the plea is bad for duplicity. A double plea is one which consists of several *distinct and independent* matters alleged to the same point and requiring different answers. Gould's Pleading, page 420. But this rule is not violated by introducing several matters into a plea if they be constituent parts of the same entire defence. I Chit., page 512; *Handy* v. *Waldron*, 18 R. I. 567. Without the allegation objected to in the plea before us it would not state full defence to the action, and hence would be demurrable, because notwithstanding the fact that the town had reached its debt limit when this bill was contracted, yet there might have been money in the treasury at that time which had been specially set apart for the payment of claims like the one

in suit; and if the town had the means in its treasury to meet this indebtedness, or would have it in anticipation of its current revenue, the contracting of the liability, even though the town then was up to its debt limit, would not be a violation of the statute. Dill. Mun. Cor. 4 ed. § 135; *Dively* v. *Cedar Falls,* 27 Ia. 227 (232); *Barnard* v. *Knox County,* 105 Mo. 382 (391)."

It is to be noted that the plea which was held good in *McAleer* v. *Angell, supra,* goes far beyond the plea in the case at bar, in that it sets up not only the excess of the debt limit, but also that there was not and never had been money in the hands of the defendant to pay the claim.

The principle above incidentally alluded to and approved in the case cited, has frequently been followed in other states. In the case of *Grant* v. *City of Davenport,* 36 Ia. 396, an ordinance permitted the formation of a water company by certain persons, and granted to the company a privilege to supply water to the city for a term of years; and provided for payment of certain annual sums for fire-hydrants and other service for a series of years. Upon a suit in equity brought by citizens and taxpayers to restrain the defendant from carrying the ordinance into effect, because the city would thereby exceed its legal debt limit, the court, after setting forth constitutional provisions limiting the powers of the defendant to incur debts, and the necessity and propriety of providing for a water supply for domestic purposes and fire protection, proceeds to the discussion of the effect of the ordinance and the powers of the defendant, as follows:

"But, if it can induce individuals or a corporation to construct and maintain such works for the use and benefit of the municipality and its inhabitants, and can pay a just and fair rent, as agreed, out of its current revenues, and can also, out of such revenues, pay its other ordinary expenses, we can see no sufficient reason for holding that an agreement to pay such rent either weekly, monthly, quarterly or annually, creates an indebtedness against the city. If it did create an

indebtedness, then an ordinance providing for the payment of the salaries to the officers of the city would also create an indebtedness and would be invalid, where the maximum of indebtedness has already been reached. And such construction would also render invalid every contract for the delivery of lumber to repair a bridge or a sidewalk, or for the hauling of gravel to repair a street, or for the employment of a laborer to work thereon.

"And, to carry the illustrations further, it is very manifest that a city, already indebted to its maximum limit, could not purchase, upon credit, real property with buildings thereon, suitable for its offices, council room, etc.; nor could it, having the real estate, make valid contracts upon its credit for the erection of such buildings; nor employ laborers to put up such buildings, and issue daily, weekly or otherwise, its warrants for such labor, where its cost is manifestly above the amount it can pay out of its ordinary current revenue, and at the same time defray its other necessary and current expenses. But it may rent such real estate and buildings for a like use, and agree to pay, at fixed periods, a reasonable rent, not exceeding, with the other expenses, its ordinary current revenue; and such a contract for payment of rent would not be creating an indebtedness, for it is in effect a cash transaction, where the payments are made *pari passu* with the accumulation of the rent; and the length of time the contract is to continue, whether it be for thirty days or thirty years, does not alter its effect.

"Suppose a man having a family to support and is without other means to do it, except his salary, which is adequate for that purpose. He is compelled to rent a house to live in, and by a contract for a term of years he can reduce its cost, and he therefore makes a lease for ten years at $300 per year, or $3,000 for the term, the rent being payable monthly, quarterly or annually. Has that man created an indebtedness of $3,000? Does any fair or legitimate meaning of the word 'indebtedness' or indebted, or does any general acceptation of its meaning require us to affirm that he is indebted?

We think not.   Or, if instead of renting a house, he should contract for the board of his family for a like term, at $1,000 per year, does he thereby become indebted in the sum of $10,000?   It seems to us not.

"From these illustrations, as well as from the plain and practical meaning of the language of the constitutional inhibition, the true rule and just interpretation is evolved, to wit: that where the contract made by the municipal corporation pertains to its ordinary expenses, and is, together with other like expenses, within the limit of its current revenue and such special taxes as it may legally, and in good faith intend to levy therefor, such contract does not constitute 'the incurring of indebtedness' within the meaning of the constitutional provisions. *Dively* v. *The Town of Cedar Falls*, 27 Iowa, 227."

The principle above set forth was cited with approval in Appeal of the City of Erie, 91 Pa. St. 398, 403, although not applied, because the facts shown of record did not warrant such application.

Again in the case of *City of Valparaiso* v. *Gardner*, 97 Ind. 1, very similar in scope to the case of *Grant* v. *Davenport, supra,* where tax-payers attempted to enjoin the city from carrying out a contract for municipal water-supply at an annual expense of $6,000 for a period of twenty years, the court after setting forth the facts showing the resources of the city and its annual revenue sufficient to pay all its current annual expenses, including the water-rent of $6,000 per annum, and setting forth the provisions of law limiting its capacity to incur corporate debt, and reviewing a number of cases, proceeds as follows (p. 12):

"We have assumed that the supply of water is necessary to the welfare of the inhabitants of the municipality, and that it constitutes one of the items of current expenditure essential to the welfare of the corporation, and this assumption rests upon the facts pleaded in the answer.   This distinguishes the case, as is well shown in *Grant* v. *City of Davenport, supra,* from the cases in which property is purchased or

subscriptions made to the capital stock of railroad or other corporations. It is the items of expense essential to the maintenance of corporate existence, such as light, water, labor and the like, that constitute current expenses, payable out of current revenues. The authorities agree that current revenues may be applied to such purposes even though the effect be to postpone judgment creditors. *Coy* v. *City Council*, 17 Iowa, 1; *Coffin* v. *City Council*, 26 Iowa, 515; *Grant* v. *City of Davenport, supra.* When the current revenues are sufficient to fully pay the current expenses necessarily incurred to maintain corporate life, there can not be said to be any debt. We do not assert that a debt may be created even for current expenses, if its effect will be to extend the corporate indebtedness beyond the constitutional limit, but we do assert that where the current revenues are sufficient to defray all current expenses without increasing the indebtedness, there is then no corporate debt incurred for such expenses. To illustrate our meaning, suppose a laborer is employed on the first day of April to render services on the first day of May, that on the day of the employment there is no money in the treasury, but on the first day of May, when the services are rendered, there will be more than enough yielded by the current revenues, there is in such a case really no debt. Again, suppose that on the first day of April gas is needed for that month, and that on each day of that month the current revenues are sufficient to pay each day's gas bill, there will be no debt even though there was not sufficient money to pay the month's account in the treasury on the day the contract was made. Such contracts do not create a debt prior to the rendition of the services in the one case, or to the furnishing of gas in the other; they simply devote to current expenses current revenues. While as decided in *Sackett* v. *City of New Albany, supra,* the debt can not be made to exceed the constitutional limit even for the current expenses, no matter how urgent, yet current revenues as they come in may be used to defray such expenses,

and if they are sufficient for that purpose, then no debt is created.

"If a bond, note, or other obligation is executed, then, doubtless, a debt is created, for such things constitute evidences of indebtedness, but that is not the case here. So, if the consideration of the contract is received at once, instead of being yielded in the future or at intervals, then it might be said that there was a debt, but where there is nothing owing until after the thing contracted for is done or furnished, and that thing is a part of the necessary yearly expenses of the municipality, there will be no debt, if, when the thing is done or furnished there will be money in the treasury, yielded by current revenues, sufficient to fully pay the claim without encroaching upon other funds. This we understand to be the case made by the answer, and we think it a case not within the inhibition contained in the constitutional amendment.

"If a different view be taken from that which we maintain startling results would follow in the application of the principle to other cases. Take, for instance, a merchant having a large number of clerks employed for a year each, and at a fixed salary, could such a merchant in making out his tax-list deduct the aggregate amount of all the salaries computed to the end of the year, on the ground that it constituted an indebtedness? Take, again, the same supposed case, and would any one say that the merchant's solvency was to be determined by taking into consideration the aggregate of the salaries that would be due his clerks at the end of the year? Take, for another example, the case of a private corporation, actively engaged in business, could it be pushed to the wall on the ground that it was insolvent, by evidence that it had contracted with a large number of men for a year's service, and that the aggregate sum due at the end of the year would be much greater than the value of its property at the opening of the year? Take still another example, a municipal corporation—and here there need be no supposition—with its officers (some of them with terms of several years), its

policemen and its firemen, is it indebted, at the beginning of the year, for the grand aggregate of all the salaries to the end of all the terms? In the case of the merchant and of the private corporation, it certainly would be held, without hesitation or doubt, that if the current income or profit, would discharge the obligations there would be no indebtedness; and this must be true of municipal corporations in cases where there will be money in the treasury, derived from current revenues, sufficient to pay for services rendered or things furnished, as part of the current corporate expenses, when the services are rendered or the things actually furnished. Expenses of such a character should be deemed incidental expenses of the corporate business, and not debts, and as long, at least, as the current revenues will pay these expenses without taking from funds devoted to other purposes by command of the corporate charter what properly belongs to them, there is no indebtedness within the meaning of the constitution."

The same general principles have been fully recognized, and applied or not, according to the facts developed, in the following cases: *Smith* v. *Town of Dedham*, 144 Mass. 177; *Barrett* v. *City of East St. Louis*, 89 Ill. 175; *Brashear* v. *City of Madison*, 142 Ind. 685; *City of Terrell* v. *Dessaint*, 71 Tex. 770; *Hull* v. *Ames*, 26 Wash. 272; *Town of Kankakee* v. *McGrew*, 178 Ill. 74; *Water Works Co.* v. *Carterville*, 142 Mo. 101; *McNeal* v. *City of Waco*, 89 Tex. 83; *City of Walla Walla* v. *Walla Walla Water Co.* 172 U. S. 1, 20.

The sum of $275.40, more than one-half of the plaintiff's claim in suit, is for his statutory fees as dog-officer in making the list of dogs, etc., under the provisions of Chap. 135, Sec. 12–13 above quoted. As to this portion of his claim, which (3) is fixed by law as compensation for a duty imposed by law, it is well settled that the question of whether or not the town has exceeded its debt limit has no application; this was recognized in the case of *McAleer* v. *Angell*, 19 R. I. 688, 692, *supra*, and is also recognized in *Lewis* v. *Widber*, 99 Cal. 412; *Bloomington* v. *Perdue*, 99 Ill. 329; *Town of Kankakee* v.

*McGrew,* 178 Ill. 74; *Smith* v. *Town of Dedham,* 144 Mass. 177, 180; *Security Co.* v. *Baker County,* 33 Or. 338.

(4) In view of all these cases, and of the principles therein so clearly set forth, this court is of the opinion that the evidence offered to show that the debt limit of the town of Cranston had been exceeded was immaterial, in the absence of proof showing that the town had not the means in its treasury to pay the claims or that it would not have the means from its current revenues.

Defendant's counsel cites a few cases wherein there are some expressions of opinion which are claimed to be opposed to the doctrines above set forth; to the effect that even current expenses, or statutory fees and compensation fixed by law cannot be provided for out of current revenue, where the debt-limit has been exceeded.

In *State ex rel. &c.* v. *City of Helena,* 24 Mont. 521, where a contract for water-supply was under consideration, providing for large payments per month for a term of years, and where the constitutional prohibition was against a city becoming indebted *in any manner or for any purpose,* in excess of certain fixed limits, it was found that by the terms of the contract the city would "become indebted" in excess of the prescribed limits, and so that the contract was void. But it expressly distinguishes the case from that of *City of Walla Walla* v. *Walla Walla Water Co.,* 172 U. S. 1, where the Supreme Court of the United States, considering a contract for municipal water-supply, in discussing limitations as to incurring debts, under the charter of the city of Walla Walla, says at p. 20: "The obvious purpose of limitations of this kind in municipal charters is to prevent the improvident contracting of debts for other than the ordinary expenses of the municipality. It certainly has no reference to debts incurred for the salaries of municipal officers, members of the fire and police departments, school teachers or other salaried employés to whom the city necessarily becomes indebted in the ordinary conduct of municipal affairs, and for the discharge of which money is annually raised by taxation."

The case *Lake County* v. *Rollins*, 130 U. S. 662, cited by defendant's counsel, preceded the Walla Walla case by several years, and it was a suit on numerous county warrants, issued for various expenses, when there appears to have been no money to pay them, and when the debt limit had already been exceeded; and the court found the warrants to be void; but this case is cited and expressly distinguished from the *Walla Walla* case, (172 U. S. p. 21).

In *Doon* v. *Cummins*, 142 U. S. 366, also cited by defendant, where it appeared that a certain school district issued and sold refunding bonds, the proceeds of which were to be used for refunding an old debt, but were not in fact so used, the court found under the provisions of the constitution of Iowa that the issue was the present creation of a debt in excess of the debt limit and the bonds were held void. The case has no application here.

The cases of *Buchanan* v. *Litchfield*, 102 U. S. 278, and *Litchfield* v. *Ballou*, 114 U. S. 190, involved the question of the validity of the issue and sale of certain bonds for the purpose of raising money to build water-works; and the court found that they were issued in excess of the debt limit prescribed by the constitutions of Illinois and were void. The cases have no application here.

The case of *Prince* v. *City of Quincy*, 105 Ill. 138, relates to the validity of a municipal contract for water-supply, under the constitution of Illinois, in all respects similar to the case of *State* v. *City of Helena, supra,* and is decided on the same principle, and is quite inapplicable to the case at bar. The case of *Commissioners* v. *Gillett*, 9 Okla. 593, also cited by defendant, expressly recognizes (p. 602–3) the validity of county warrants issued for current expenses in anticipation of taxes already levied, although the debt limit had been exceeded; in short, we find nothing in the cases cited by the defendant which in any way disturbs our conclusion above reached, in view of the numerous authorities cited and from which we have quoted, that, under the facts and circumstances of this case, the evidence offered by the defend-

ant relating to the debt of the town of Cranston was immaterial. The exception relating to the exclusion of this testimony is therefore overruled.

The next exception relates to the testimony offered by the defendant's counsel, that there was no appropriation made by any proper authority, from which payment of the plaintiff's claim could properly be made. Defendant's counsel offered himself as a witness as to the facts, without attempting to produce, or to account for the lack of, record evidence on this point, where it was quite evident that such record evidence could and should have been produced, if it existed. It is quite manifest that it would have been error to allow him to offer his oral evidence of such matters. 3 Elliott Ev. § 1942; *Owings* v. *Speed,* 5 Wheat. 420; *Hutchinson* v. *Pratt,* 11 Vt. 402; *Gilbert* v. *New Haven,* 40 Conn. 102; *Morrison* v. *Lawrence,* 98 Mass. 219, 221. This exception is overruled.

The only other exception is to the direction given by the trial judge, to the jury, to return a verdict for the plaintiff; the evidence before the jury was quite sufficient to warrant such a direction; in fact there was no evidence admitted, or competent evidence offered, which in any way questioned or controverted the plaintiff's evidence.

We find no error; the exceptions alleged by the defendants are all overruled, and the case is remitted to the Superior Court, with direction to enter judgment upon the verdict for the plaintiff.

*Benjamin W. Grim,* for plaintiff.

*John P. Brennan,* for defendant, on the appeal.