First Trust and Savings Bank of Kankakee et al., Appellants, v. Town of Ganeer, Kankakee County, Illinois, et al., Appellees.

Gen. No. 9,285.

Opinion filed August 16, 1938.

A. L. and C. M. GRANGER and IRWIN C. TAYLOR, all of Kankakee, for appellants.

HARRY S. STREETER and ARMEN R. BLANKE, both of Kankakee, for appellees.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

The complaint herein was filed in the circuit court of Kankakee county on January 11, 1936 and alleged that from April 13, 1932 to May 13, 1933, Edward P. Cleary was the duly appointed, qualified, and acting supervisor of the town of Ganeer in Kankakee county and that during that period he, as such supervisor, contracted certain indebtedness in behalf of the town in a series of transactions, and as evidence of such indebtedness issued a series of so-called supervisor's orders, all of which were in substantially the following form:

"Supervisor's Order        Ganeer Township
No............        Date............ 193..
    To ................................
Please furnish ............... with ..............
amount not to exceed .................. Dollars in trade. Charge same to Ganeer Township.
$...........
                    ....................Supervisor.
Order covering amount of bill must be turned in for settlement. (Bears interest at 6% per annum until paid.)"

The complaint then alleged that the plaintiffs were the bona fide owners of claims evidenced by orders in form similar to the foregoing, which were issued and signed by the said Cleary as such supervisor; that they acquired their title to said orders at various times prior to May 13, 1933 by purchase from the several persons to whom such orders were issued; that the plaintiff, First Trust & Savings Bank, hold the following orders, viz: one dated June 9, 1932 issued to J. H.

Templeton for $150 for services as assessor, one dated June 28, 1932 issued to Cleary's market in the amount of $50.60 for groceries and meats, one dated July 8, 1932 issued to Cleary's store for $100 for groceries for Jack Prairie, one dated July 8, 1932 issued to Cleary's market for $120 for groceries and meats for Mrs. Anderson, one dated September 7, 1932 issued to Cleary's market for $56 for groceries and meats for Theo. Comus, and one dated September 15, 1932 issued to Cleary's market for $76 for groceries for pauper. The complaint then alleged that the plaintiff, Kankakee Citizens System Company held nine similar orders describing each substantially as above and that the plaintiff Walter S. Houdlett held an order dated July 21, 1932 issued to Cleary's store in the amount of $75 for groceries and meats for paupers. The complaint then alleges that the orders have not been paid nor the claims underlying them and that the defendant is therefore indebted to plaintiffs as assignees for services, labor, material, goods and merchandize sold and delivered and for interest in the amount of $3,000 and demanded judgment against the defendant for that sum.

The defendant, Town of Ganeer, filed its verified answer admitting that E. P. Cleary was supervisor of the town of Ganeer from April 13, 1932 to May 13, 1933 and was charged with the duties of such office but denied that Cleary lawfully and properly discharged his duties as such supervisor. The answer admits that Cleary contracted certain indebtedness in a series of transactions but denies that such indebtedness was contracted by him in the performance of lawful and proper duties as supervisor or that such indebtedness so contracted by him was or is the actual indebtedness of the town. The answer admits that Cleary issued and signed the orders in the form set out in the complaint but denies that the orders are any evidence of

indebtedness of the town and denies that plaintiffs are the actual bona fide holders of said orders, denies that they are negotiable, denies that plaintiffs acquired said orders prior to May 13, 1933 by purchase from the parties to whom they were issued and denies that the defendant is indebted to the plaintiffs as assignees or otherwise for services, labor, material, goods and merchandise or for interest. The answer further denies that the orders were issued for the purposes set forth in the orders except it was admitted that those issued to the assessor and to the town clerk, and to the Momence Press Reporter for printing ballots and to Jesse P. Wehr for repairing the town hall were issued for those purposes.

After the issues had been made up, the cause was submitted to the court for determination, resulting in a judgment finding the issues in part for the plaintiff Kankakee Citizens System Company and rendering judgment in its favor for $224.90, being the aggregate of the sums represented by order No. 52, for $64.90 dated July 14, 1932 issued to the Momence Press Reporter for printing ballots and by order No. 110 dated Dec. 23, 1932 for $160 issued to Jesse P. Ware for repairing the town hall. The court found all other issues in favor of the defendant and rendered judgment in its favor in bar of the action and for costs. From this judgment the plaintiffs have appealed.

It was stipulated that the orders set forth and described in the complaint and which were produced upon the hearing were the property of appellants and that they were the holders thereof and of any claims against defendant, which said orders evidenced. The evidence discloses that Edward P. Cleary was supervisor of the town of Ganeer from April 13, 1932 to May 13, 1933, that he issued the several orders described in the complaint and made a notation upon each that it was not paid for want of funds. The

mother of Edward P. Cleary, Elizabeth Cleary and his sister-in-law Nellie Cleary were proprietors of a retail grocery and meat store spoken of in the record as Cleary's store or Cleary's market. Edward P. Cleary testified that he ran the store as manager and carried on the business, lived in the household with his mother and niece and the provisions for the home came from the store but he received no salary for his services and had no financial interest therein. Cleary as such manager of said store extended to various paupers a limited amount of credit, and when that credit was exhausted he, as supervisor, issued and delivered to himself as manager of the Cleary store eleven of the orders described in the complaint. The Cleary store being indebted to various concerns for supplies, meats or goods turned some of the orders described in the complaint and which Cleary had issued to the store over to such concerns in satisfaction of or to be applied upon the indebtedness of the store to such concerns and these orders were thereafter assigned to the plaintiffs. The other orders described in the complaint were sold by Cleary to the plaintiffs or to their assignors.

Cleary testified, over objection, that at the time he took office in 1932 there was no money in the pauper account. On the first Tuesday of April, 1931, the record discloses that appellee levied for town purposes the sum of $4,750, of which amount $3,850 was for the support of the poor of the town and the evidence is that from April 13, 1932 to and including April 26, 1933, Cleary as supervisor received $4,644.37 for all purposes from the county collector of taxes. Each of the eleven orders issued to Cleary's store or market bear the indorsement of that store by E. P. Cleary, manager, and all bear an indorsement over his signature as supervisor or treasurer to the effect that the orders were not paid for want of funds. Of the other

three orders involved in this appeal, one was issued to J. H. Templeton on June 2, 1932 for $150 and states that it was issued to him for services as assessor, another is dated September 17, 1932 issued to E. P. Cleary for salary as supervisor and the other is for $150, dated October 1, 1932 and issued to Andrew Kinney for salary as town clerk. As to this order, Cleary testified that Kinney was town clerk and over counsel's objection stated that so far as he (Cleary) knew, he, Kinney, received no salary other than this order. As to the order to himself, Cleary testified: "I did have fees coming to me and issued orders. I made payment on account of my fees from time to time. I wouldn't say whether this particular order was issued in payment of unearned fees or not. I might have issued orders for supervisor's commissions before they were earned. I didn't always figure it up. I couldn't say whether or not I issued supervisor's orders for commissions in excess of the amount coming to me over the period. I couldn't say. I might have. I don't recall." As to the other order which was issued to J. H. Templeton for services as assessor, Mr. Templeton testified that he was the assessor of appellee in 1932, that he went to Ed. P. Cleary, the supervisor, to be paid for his services as such assessor, that his salary as assessor was more than $150, that Cleary told him he didn't have any money but would make out two orders, one for $150 and one for $200, that he did so and Templeton indorsed them and gave them back to Cleary, who said he would sell or dispose of them and bring Templeton the amount due him. That Cleary did not do so but eventually Cleary paid Templeton's taxes and other items for him and gave him another order for $100. Templeton stated that he was unable to cash this $100 order and that he took it back to Cleary and Cleary finally paid it. Templeton further testified that he received all his money and the town owed him nothing

and Cleary's testimony was that he thought he paid Templeton out of township funds.

F. C. Clark, who succeeded Cleary as supervisor, testified that he received no books of any kind from his predecessor, that he made an effort to find the records of the town of Ganeer but was unable to locate anything except some canceled checks, vouchers and a report of Cleary, the contents of which report are not abstracted. Several witnesses testified, among them being Jesse Prairie and Theodore Comus, to the effect that they were receiving food, clothing and groceries from appellee while Cleary was supervisor to whom they applied for help, that Cleary allowed them to purchase at the store four or five dollars worth of supplies each week and that when they made a purchase they received, at times, a duplicate purchase slip and at two weeks or a month interval Cleary would have them sign some kind of a slip which the witness supposed stated that he had received so many dollars worth of groceries.

From the foregoing evidence counsel for appellants insist that the only conclusion that can be arrived at is that appellee is lawfully indebted to appellants for merchandise furnished by Cleary's store to the paupers of the town as evidenced by the several orders described in the complaint and also liable to appellants for the salary of its assessor, town clerk and supervisor to the amount indicated by the three orders hereinbefore referred to and in support of their contention cite and rely entirely upon *Town of Kankakee v. McGrew,* 178 Ill. 74. It is insisted by counsel for appellee that the facts in the instant case are clearly distinguishable from the facts in the *McGrew* case, that here the evidence entirely fails to establish any indebtedness against the town and that the judgment of the trial court is the only judgment that under the law and the facts could have been rendered.

In *Town of Kankakee v. McGrew*, 178 Ill. 74, the declaration consisted of the common counts and was an action brought against the town of Kankakee to recover $763.70, which represented various amounts due divers persons who had accounts against the town, which had been presented to and audited by the board of town auditors. Some of the demands included in the accounts were for coal and other supplies furnished to poor and indigent persons of the town. The board found all the accounts to be correct and an order was ordered to be drawn and was drawn upon the treasurer in favor of the plaintiff. The opinion stated that the warrant was offered and received in evidence but that the plaintiff did not rely upon it because it was void inasmuch as there was then no money in the treasury and no tax in the course of collection. In affirming a judgment for the plaintiff for the full amount of the orders, the court stated that it was the express statutory duty of the supervisor, as overseer of the poor, to relieve the wants of those who fall within the legal denomination of paupers and held that a town cannot refuse to discharge that duty upon the ground that it has no money in its treasury and no tax in the course of collection, that if there are no funds available for that purpose, the overseer must, of necessity, have the power to pledge the credit of the town in that behalf and may procure supplies for such persons from merchants, grocers and tradesmen, who, in the absence of fraud, may deliver such supplies upon the order of the overseer and hold the town liable therefor without being required to show that such person so receiving support was in fact actually entitled thereto.

In the instant case the record discloses that appellant, First Trust and Savings Bank, presented its orders to the board of town auditors and that board refused to allow them. The other appellants never presented their orders to the board for audit. In the *Mc-*

*Grew* case the town board found all the accounts to be correct and an order was drawn upon the treasurer for the aggregate amount of the accounts. While the evidence in the instant case discloses that groceries and supplies were furnished to some of the poor of the town by the Cleary store and that the Cleary store did so at the verbal request of the supervisor, we are clearly of the opinion that from all the facts shown by this record, appellants are precluded from a recovery. Cleary kept no record of any kind or character. He issued orders to the store of which he was manager and from which he derived his livelihood. The orders were issued after the groceries and supplies were furnished. There is no proof that paupers received the groceries or merchandise called for by the several orders. It was not sufficient for appellants to show that the poor generally received groceries of the value of the order but even this is not shown by the record here. For instance, order No. 113 is dated December 30, 1932 and is directed to Cleary's store and requests that store to please furnish the paupers of Ganeer township with meats and groceries in an amount not to exceed $280.28 and directs the Cleary store to charge that amount to Ganeer township. This order left it to Cleary's store to determine who the paupers were to whom they might furnish groceries but the *McGrew* case, *supra,* holds that the supervisor must determine who the paupers were that required and were entitled to assistance.

Sections 119 and 120 of chapter 139 of the Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 133.122, 133.123] provides among other things that the board of town auditors shall meet semi-annually and examine and audit the accounts of the supervisor and overseer of the poor (where the town sustains its own poor) for all moneys received and distributed by him, and shall also examine and audit all charges and claims against their

town, and the compensation of all town officers, except the compensation of supervisors for county services. In *Board of Auditors v. People,* 38 Ill. App. 239 (242) it is said: "It will be seen that the action of the Board of Auditors is of the utmost importance, and that their certificate when not impeached has all the force and effect of a final judgment against the town, to be collected by the process of taxation. The Board is composed of town officers, chosen by the people, and presumably worthy of public confidence. It is reasonably clear that in the general discharge of their duties, they are expected to exercise their own judgment and to reject all claims not properly chargeable against the town." In the *McGrew* case, *supra,* the claim was audited and allowed by the board of town auditors but not so here. Section 121 of the same act provides that the account so audited, and those rejected, if any, shall be delivered with the certificate of the auditors to the town clerk to be kept on file for the inspection of any of the inhabitants of the town. Section 123 provides that the certificate shall contain a statement specifying the nature of the claim or demand and to whom allowed, and this certificate shall be kept by the town clerk on file also for inspection of any of the inhabitants of the town. Section 124 provides what shall be deemed town charges and in *People v. Chicago I. & S. R. Co.,* 248 Ill. 126, it was held that claims against the town are required by statute to be audited and allowed by the board of town auditors before they can be made the basis for the levy and the collection of taxes. While the town might be liable under certain circumstances for food or supplies furnished or services rendered, still these statutory provisions require that a claim against the town shall be audited and allowed by the board of auditors. Section 126 of the statute authorizes the audited accounts to be paid by the supervisor on presentation of the certificate of the

town clerk stating the amount and to whom allowed; the date when audited and on what account, which certificate before payment of the amount shall be countersigned by the supervisor. Until audited, allowed and this certificate presented, the supervisor has no authority to pay any claims. The supervisor's orders in the instant case were viod as they were issued without any statutory authority therefor. No action can be maintained on the orders themselves nor can any action be maintained on the claims because they had never been audited and allowed and were not contractural obligations of the town. Furthermore, the language in the *McGrew* case to the effect that the overseer of the poor, must, of necessity, have the power to pledge the credit of the town for the support of the poor and that merchants, grocers and tradesmen may deliver the supplies upon the order of the overseer and hold the town liable therefor, cannot be construed as meaning that the order of the overseer of the poor constitutes a contractural obligation against the town before it is audited and allowed.

Prior to the trial and in pursuance to Rule 18 of the Supreme Court, counsel for appellants filed their motion requesting appellee and its counsel to admit certain facts which appellants would be obliged to prove by Edward P. Cleary who lived at that time in South Bend, Indiana. Appellee refused to admit the facts set forth in the notice and appellants therefore were obliged to take the deposition of Cleary at South Bend. The trial court denied appellants' motion to tax the cost and expense of taking the Cleary deposition against appellee and appellants insist this was error.

The applicable portion of Rule 18 of the Supreme Court provides that in case of refusal to admit any specific fact or facts mentioned in the notice, which can be fairly admitted without qualification or explanation as stated in the notice that then the expense incurred

in proving such fact or facts, including a reasonable counsel fee for the time and attention devoted thereto, must be ascertained at the trial and paid by the party so refusing, whatever the result of the cause or issue may be unless at the trial the court certify that the refusal to admit was reasonable or unless the court shall order otherwise. The proof is that the expense connected with taking the Cleary deposition amounted to $40.60, together with $50 attorney fees. Under all the facts as shown by this record, appellee could not have admitted without qualification or explanation the facts set forth in appellants' request, and its refusal to do so seems warranted and in our opinion the trial court did not abuse its discretion or act capriciously in denying appellants' motion.

The judgment was warranted by the law and the evidence and will be affirmed.

*Judgment affirmed.*