(No. 3139—

ROBERT H. STREEPER AND I. H. STREEPER III, A CO-PARTNERSHIP, DOING BUSINESS UNDER THE NAME OF C. N. STREEPER SONS, Claimants, vs. STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1939.*

I. H. STREEPER, III, for claimants.

JOHN E. CASSIDY, Attorney General; GLENN A. TREVOR, Assistant Attorney General, for respondent.

MR. CHIEF JUSTICE HOLLERICH delivered the opinion of the court:

Claimants are engaged in the undertaking business at Alton, Illinois, and on November 5th, 1937, filed their claim herein for $1,925.00, for services in connection with the burial of fifty inmates of the Alton State Hospital;—such services having been rendered at various times during the period from February 8th, 1933 to June 2d, 1937, inclusive.

It appears from the record that each and every burial was ordered by the Superintendent of the institution, in accordance with a custom which is as old as the institution itself; that so far as can be ascertained, none of the persons buried left any estate; that none of the relatives of any of such deceased persons claimed the body; that all of the bodies were buried in the institution cemetery; and that the charge made for each burial, to wit, $38.50, is the charge fixed by the Department of Public Welfare therefor.

Claimants presented their claim to the Managing Officer of the Alton State Hospital on or about September 11th, 1937, but payment thereof was not made on account of the fact that the respective appropriations from which the several items were properly payable, had lapsed prior to the time any action could be taken on the claim.

The Attorney General has entered a motion to dismiss the case, and contends that there is no constitutional or statutory provision making the State liable for the burial expenses of inmates of a State hospital; and that under the provisions of the "Pauper Act" of this State (Ill. Rev. Stat. 1937, Chap. 107) and the decision of the Supreme Court in the case of *Town of Kankakee* vs. *McGrew,* 178 Ill. 74, construing certain provisions of such Act, the liability for such burial expenses is upon the relatives of the deceased inmate, if they are of sufficient ability, and if not, then the liability is upon the municipality charged by the provisions of the "Pauper Act" with the support of such persons.

The pertinent sections of such "Pauper Act" are as follows:

Section 1—"That every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers or sisters of such poor person, if they, or either of them, be of sufficient ability."

Section 14—"Counties not under township organization shall relieve and support all poor and indigent persons lawfully resident therein," etc.

Section 14(a)—"Cities, villages and incorporated towns having a population of more than 500,000 inhabitants and all incorporated towns which have superseded civil townships, shall relieve and support all poor and indigent persons lawfully resident therein," etc.

Section 15—"In counties under township organization * * * the various towns * * * shall relieve and support all poor and indigent persons lawfully resident within their respective territories," etc.

It will be noted that each and all of the aforementioned sections provide only for the "support" of the unfortunate persons therein named, and that no reference whatsoever is made to the burial expenses of such persons.

In the case of *Town of Kankakee* vs. *McGrew, ante,* relied upon by the Attorney General, the court, in considering the several sections of the "Pauper Act," said, page 84:

"The necessities of the unfortunate class designed to be relieved by the law do not, however, admit of delay. Pain and suffering must be relieved; food, fuel, clothing and shelter must be furnished to those in need; *the dead must be buried.*"

The important part of the above quotation is the recognition by the Supreme Court of the fact that the burial is a part of the support which must be furnished.

The aforementioned "Pauper Act" was adopted in 1874 and so far as the question here involved is concerned, the sections quoted are substantially the same now as they were when first enacted.

In considering the question here involved, it will also be necessary to consider some of the provisions of the "Charities Act" of this State (Ill. Rev. Stat. 1937, Chap. 23, approved June 11, 1912).

Section 20 of such Act provides as follows:

"The Board of Administration is hereby required and empowered to cause the removal of insane persons from county almshouses to State hospitals for the insane," etc. * * * "After sufficient accommodations shall have been provided in State institutions for all the pauper and indigent insane of all the counties of the State, the cost of clothing and other incidental expenses of county insane patients in State hospitals shall not be a charge upon any county after the first of January next ensuing, but the cost of the same shall be paid out of funds provided by the State for the support of the insane."

### Section 21 of such Act provides as follows:

"No insane person now, or hereafter, under the care of any State hospital in this State, shall be returned or committed to the care of any county insane asylum or almshouse, or to any county, town or city authorities; and the said county, town or city authorities are hereby forbidden to receive any such patient who may be returned or committed to them in violation of this section. After the State has assumed complete care of the public insane, no insane person shall be permitted to remain under county care, but all public insane shall be committed to the State hospital for the insane, or to private hospitals for the insane, as provided herein."

### Section 23 of such Act provides as follows:

"The total cost of the support of inmates of State hospitals for the insane shall be a charge against the estates of patients or their conservators, or against the relatives of such patients who would be liable for the support of the persons of such inmates under an Act entitled 'An Act to Revise the Law in Relation to Paupers,' approved March 23, 1874, if they were not inmates of such hospitals," etc. * * * "and upon the death of any such patient while an inmate of a State hospital for the insane, it' shall be the duty of said board to file a claim against the estate of said deceased patient for all the balance of the unpaid support given for the entire term such deceased person was an inmate of any State hospital for the insane, and it shall be the duty of the court in which such claim is filed to allow the same and direct its payment in due course of administration."·

From a reading of said Sections 20, 21 and 23, it seems clear that it is the policy of this State since the adoption of the "Charities Act" of 1912, that all of the insane patients of the several counties of the State shall be cared for and supported by the State, at State institutions such as the Alton State Hospital. If the "support" of such persons includes burial expenses, as indicated by the Supreme Court in the McGrew case, then such burial expenses must be furnished by the State.

It also seems clear that since the adoption of the "Charities Act" of 1912, there is no liability on the part of the county, township, or other municipal corporation for the support of the patients at any State hospital for the insane. The fact that Section 23 provides that the total cost of the support shall be a charge against the estates of patients, or against the relatives who would be liable for their support under the "Pauper Act," indicates that the support is to be furnished by the State, and that the cost thereof is to be recovered, if possible, from the estate of a patient, or from his relatives if they are of sufficient ability to pay for the same.

All of which leads to the conclusion that the ''support,'' including burial expenses of deceased patients whose bodies are not claimed by their relatives, is to be furnished by the State, and that the State is liable therefor in the first instance.

The fact that the State has established a cemetery at such institution would seem to indicate that this is the construction which has been placed upon the Act by the State itself.

In this connection it might be well also to consider briefly the liability of the State, under the facts here involved, in the absence of any statutory provisions relative thereto.

In an annotation on ''The Duty and Liability of Strangers in Respect to Corpse,'' L. R. A. 1918D, the following annotation appears on page 281:

"There is little of actual decision upon the duty and liability of strangers in respect to a corpse. The leading authority is the opinion of Lord Denman in *Reg.* vs. *Stewart* (1840) 12 Ad. & Ed. 773, 113 Eng. Reprint, 1007, 8 Eng. Rul. Cas. 462, where he said: 'It should seem that the individual under whose roof a poor man dies is bound to carry the body decently covered to the place of burial; he cannot keep him unburied, nor do anything which prevents Christian burial: he cannot therefore cast him out, so as to expose the body to violation, or to offend the feelings or endanger the health of the living and for the same reason he cannot carry him uncovered to the grave.' It will probably be found, therefore, that, *where a pauper dies in any parish house, poor house, or union house, that circumstance casts on the parish or union, as the case may be, to bury the body;* not by virtue of the Statute of Elizabeth, but on the principles of the common law. * * * The modern view of the law is based generally upon the foregoing observations of Lord Denman.

"Thus, the first part of the statement heretofore quoted from *Reg.* vs. *Stewart* was referred to, for example, in *Wynkoop* vs. *Wynkoop* (1863) 42 Pa. 293, 82 Am. Dec. 506, and was quoted in *Pierce* vs. *Swan Point Cemetery* (1832) 10 R. I. 227, 14 Am. Rep. 667, and in *Rappelyea* vs. *Russell* (1862) 1 Daly (N. Y.) 214.

"So, in *Patterson* vs. *Patterson* (1875) 59 N. Y. 574, 17 Am. Rep. 384, the court said: 'It would seem, at common law, that if a poor person of no estate dies, it is the duty of him under whose roof his body lies to carry it, decently covered, to the place of burial'; and in *Scott* vs. *Riley* (1883) 16 Phila. (Pa.) 106, it was said that the common law casts the duty of burying the dead in the proper manner and place upon the person under whose roof the death occurs. * * *

"In *Finley* vs. *Atlantic Transp. Co.* * * * 220 N. Y. 249, L. R. A. 1917E, 852, 115 N. E. 715, the court said: 'At common law it is the duty of an individual under whose roof a poor person dies to carry the body, decently covered, to the place of burial, and to refrain from doing anything which prevents in any wise a suitable burial. The body cannot be cast out so as to expose the same to violation or to offend the feelings or injure the health of the living'."

The record in this case shows that the relatives of none of these deceased patients claimed the body.

The court is of the opinion that under such circumstances, the State, having a proper regard for the sensibilities of the public, for the protection of those rights which are held sacred by all Christian people, and due consideration for the health of the people, cannot evade a duty which by the common law is imposed upon all citizens.

From the foregoing we conclude that under existing statutes, the obligation to support the inmates of the Alton State Hospital rests in the first instance upon the State; that under the decision of the *Town of Kankakee* vs. *McGrew,* the obligation to support includes the obligation to bury deceased patients whose relatives do not claim the body; that even if there were no statutory provisions relative thereto, there is a common law obligation on the part of the State to provide a burial for patients dying at a State hospital for the insane, where no relatives claim the body.

Therefore, we are of the opinion that the claimants would be entitled to recover from the State in a suit at law, if the State were suable, and consequently they are entitled to an award in this proceeding.

Award is therefore entered in favor of the claimants for the sum of Nineteen Hundred Twenty-five Dollars ($1,925.00).